[No. 6003. Decided March 7, 1906.]

HENRY LOHSE *et al., Respondents,* v. FREDERICK R. BURCH *et al., Appellants.*[1]

ADVERSE POSSESSION—CLAIM OF RIGHT—EVIDENCE—SUFFICIENCY. There is no sufficient evidence of claim of right or color of title to establish the title of Indians to real estate by the right of adverse possession, where it appears that, although they had for many years occupied the premises with rude huts, built on the edge of an inlet just above the line of high tide, and had at times maintained fences to control their ponies, they had never been known to make any claim to the land, and upon being asked as to their right thereto made no claim of right and consented to remove when required to do so, the only evidence of claim of title being the claim of one Indian witness, who would be its chief beneficiary, to the effect that he had paid $300 and received a writing from the owner giving him the perpetual right to reside upon the land, which writing was lost, and which evidence was contradicted by the declarations and acts of the other Indians.

SAME—EXCLUSIVE POSSESSION—SUFFERANCE OF TRUE OWNER. One claiming to be the true owner of premises cannot sustain title by proof of adverse possession as against parties who have admittedly held possession of a portion of the premises at the sufferance of the true owner.

SAME—PAYMENT OF TAXES—COLOR OF TITLE. To obtain title, under the statute, by the payment of taxes for seven years, the party

1Reported in 84 Pac. 722.

must hold under color of title and be in the actual, open, and notorious possession of the land, or it must be "vacant and unoccupied."

DEEDS — RECITALS AS TO HEIRSHIP — EVIDENCE — COMPETENCY. A deed reciting that the grantors are the sole heirs at law of the person who died seized of the land described is not competent evidence of that fact without proof of such heirship, as against one holding adversely to the grantee in the deed.

SAME—PRESUMPTIONS—ANCIENT DEEDS. The rule as to the presumption of the authenticity of recitals in an ancient deed cannot be applied to a deed made sixteen years prior to the commencement of the action, reciting that the creditors are heirs at law of the person who died seized of the premises, where lapse of time alone is relied upon without proof of the surrounding circumstances.

APPEAL—DECISION. Upon reversing an action to recover possession of real estate and quiet title, for failure of proof of title in either party, the cause will be remanded for further proceedings, in case the plaintiff elects to offer further proof.

Appeal from a judgment of the superior court for King county, Yakey, J., entered June 30, 1905, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action to recover possession and quiet title to real estate. Reversed.

*Frank C. Park* and *Robert H. Lindsay,* for appellants.

*Hastings & Stedman* and *Jesse A. Frye,* for respondents.

FULLERTON, J.—In 1853 one William Heebner settled upon a quarter section of land, situated in what is now King county, claiming the same under the act of Congress of September 27, 1850, commonly known as the Oregon Donation Act. Patent to the land was issued after the death of Heebner, and runs "unto the heirs at law of the said William Heebner, deceased," without specifically naming them. In 1888 certain persons describing themselves in the instrument of conveyance as, "Ann M. Garber (widow) of Trappe, Montgomery county, Pennsylvania, Catherine Gross (widow) of Berkshire county, Massachusetts (both sisters and the only sisters of William Heebner deceased, late of King county,

Washington Territory), Samuel Y. Heebner and Rebecca H. Heebner, his wife, and Julia R. Heebner (a single woman), all of the city of Philadelphia (said Samuel Y. Heebner and Julia E. Heebner only surviving children of Charles Heebner, who was the only brother of William Heebner aforesaid, and who died prior to the death of said William Heebner) said grantors being all of lawful age and *sui juris* and the sole and only heirs at law of William Heebner, deceased, aforesaid," etc., conveyed the land to John P. Hoyt, who subsequently conveyed it to one George M. Boman, who in turn, by mesne conveyances not necessary to be further noticed, conveyed a part thereof to the respondent Henry Lohse. The part purchased by Lohse fronts on an inlet or small bay, forming a part of the waters of Puget Sound.

The defendants Sitwalqt, Kaquolt, and Homolgood are Indians. At the time Lohse made his purchase, they were residing on the land in small wooden shacks, built on the edge of the inlet just above the line of high water mark. As to the time when they first went upon the land, the evidence is conflicting. The testimony of the Indians is to the effect that their ancestors were on the land long prior to its settlement by William Heebner, and that they have been on it continuously ever since. They claim, furthermore, that after Heebner had settled upon the land, one of their ancestors — "Old Charley" — procured of him the perpetual right to live upon the premises, paying him for the privilege the sum of $300, taking from him a writing which acknowledged the receipt of the money and described the boundaries of the tract set apart to their use. This writing was not recorded, and was lost, so the Indians relate, in an accident resulting in the overturning of a canoe in which the person carrying the instrument was riding. Witnesses on behalf of the respondents, however, say there were no Indians on this land at the time it was settled upon by Heebner.

The appellants Burch claim through the Indians. Just the nature of their contract with him, the Indians seem not

to have any very clear idea. The record shows a deed from
the Indians to Burch, conveying to him the fee in a tract
described by metes and bounds, containing about 22 acres,
reserving a life estate in the Indians for a portion thereof;
the consideration for the conveyances being, according to
Frederick R. Burch, the agreement on his part to protect
them in their possession during their natural lives. The re-
spondents are husband and wife, and brought this action to
recover possession and quiet title in themselves to the prop-
erty. The answer of the appellants was a denial of title in
the respondents, and an affirmative allegation of title in them-
selves, followed by a prayer to the effect that their title be
quieted. The cause was tried before the court without a jury,
resulting in a judgment and decree in accordance with the
prayer of the complaint. From the judgment and decree so
entered, this appeal is taken.

Taking up the question of the appellants' title first, we find
very little in the record that supports their claims, and noth-
ing that appears to us convincing. The contention that the
Indian Charley paid Heebner three hundred dollars for an
interest in the land, and received from Heebner a writing
evidencing the purchase, is in itself so highly improbable as
to scarcely merit denial, and no time will be taken to refute
it. It rests on the testimony of an Indian witness who would
prove its chief beneficiary if the contention was deemed estab-
lished, and is not only unsupported by any single scrap of
other testimony, but is positively contradicted by the declara-
tions and acts of the Indians themselves.

The contention that they have title by the statute of limita-
tions is more plausible, but we think it not established. Un-
doubtedly these Indians have lived upon this land for a long
period of time, and they have at different times maintained
rude fences around portions of it for the purpose of con-
trolling their ponies, and it may be that they have cultivated
at different times small parts of it to garden vegetables; but

there is no evidence that they ever, until just prior to the commencement of this action, claimed that they held their possession as a matter of right. On the contrary, the evidence in the record that seems to us worthy of credence is all the other way. Lohse testifies that, before purchasing the land, he and his son, together with an interpreter, went to the Indians and inquired of them what claim they made to the land, and by what right they were living upon it, telling them at the same time that he contemplated purchasing it for a brickyard, and that if he did so he would need the land they were occupying, and it would be necessary for them to move; that the Indians then told him, and in this he is corroborated by both his son and the interpreter, that they made no claim either to the land or the right to occupy it, but would move away whenever required to do so. He further testifies that, after he had made the purchase and had commenced the construction of his brickyard, the Indians came to him from time to time as the work progressed, and inquired how soon he would need the place they were occupying, telling him they did not wish to move until it was necessary for them to do so. That finally when he told them he needed the land, they actually commenced moving, and had partially removed the effects from the property before they changed their minds. It appears, furthermore, that of all the many witnesses that were called to testify concerning the length of time the Indians had occupied the land, not one had ever heard them claim to own the same, or claim that they lived upon it by any other right than that of sufferance.

In this state possession of real property, to be adverse, must be actual, open, notorious, continuous, and under a claim of right or color of title. Mere naked possession is not sufficient. *Yesler Estate v. Holmes,* 39 Wash. 34, 80 Pac. 851; *Suksdorf v. Humphrey,* 36 Wash. 1, 77 Pac. 1071; *Hesser v. Siepmann,* 35 Wash. 14, 76 Pac. 295; *Port Townsend v. Lewis,* 34 Wash. 413, 75 Pac. 982; *Blake v. Shriver,*

27 Wash. 593, 68 Pac. 330; *Moore v. Brownfield*, 7 Wash. 23, 34 Pac. 199; *Bellingham Bay Land Co. v. Dibble*, 4 Wash. 764, 31 Pac. 30; *Balch v. Smith*, 4 Wash. 497, 30 Pac. 648. This record does not disclose such a possession as the rule announced in these cases requires. While the possession shown has been sufficiently long, open, notorious, and continuous to ripen into title for at least a part of the land in dispute, it was not shown to have been either under a claim of right or color of title, and without one or the other of these essentials, possession, no matter how open and notorious, or how long continued, can never ripen into title. We conclude, therefore, that the trial court did not err in refusing to quiet title in the appellants to the land in dispute.

Passing to the respondents' claim of title, we think the court erred in adjudging them to be the owners in fee of the property. In the court below the respondents seem to have relied solely upon their record title. In this court they insist that they not only have title of record but by virtue of the statute of limitations also. We find nothing in the evidence, however, to support the latter claim. The record not only fails to show that they have had open, notorious, and exclusive possession of the property under a claim of right for the statutory period, but it shows conclusively that they have not had exclusive possession at all. The appellants and their predecessors have been in possession of portions of the land since title was acquired thereto from the government of the United States, and while they have admittedly held at the sufferance of the true owner and cannot claim title by virtue of their possession for that reason, no one else can claim title by adverse possession as against them. Their possession is adverse to every one except the true owner. Nor for the same reason can they claim title by virtue of the seven year statute. By that statute the claimant must not only have color of title and pay the taxes for seven consecutive years,

but he must be in the actual, open and notorious possession, or the land must be "vacant and unoccupied." Here, the claimants neither had possession, nor was the land vacant and unoccupied, during the years they claim to have paid taxes upon it.

The claim of the respondents must rest therefore upon their record title, and unless the deed from Ann M. Garber and others to John P. Hoyt was admissible as evidence without proof that the grantors were the heirs at law of William Heebner, they have failed to show title sufficient to warrant the relief awarded them by the judgment of the trial court. It is our opinion that it was not admissible without proof of such facts. In *Mace v. Duffy,* 39 Wash. 597, 81 Pac. 1053, we held that recitals in a deed to the effect that the grantors were the sole heirs at law of the person who died seized of the land conveyed were not competent evidence of the fact of heirship against one claiming the land adversely to the grantee in the deed. There the deed was of recent execution, and obviously the rule was correctly stated as to such deeds. If the rule were otherwise, then one claiming lands as the sole heir at law of the person dying seized of it could escape the necessity of proving his heirship by conveying the land to a third person and reciting in the instrument of conveyance that he is the original owner's sole heir at law. Such a rule would violate every principle of evidence, as well as conduce to the perpetration of fraud. The effect of recitals in deeds, however, grows stronger as time progresses, and finally becomes conclusive, especially in those deeds which form a part of the chain of title. As at common law a deed forming a muniment of title more than thirty years old could be read in evidence without proof of its execution, on making the showing that the possession of the land it assumed to convey had gone along and been held in accordance with its provisions or that the instrument came from such custody as to afford a reasonable presumption of its genuineness and was other-

wise free from just ground of suspicion—so recitals in deeds
were given authenticity when accompanied by a like showing.
The rule had its foundation in the necessities of the case;
for if strict proof of the execution of an ancient instrument
were required in all cases, it is manifest that it would fre-
quently cause a failure of justice.

The respondents seek to have the rule with respect to
ancient deeds applied to the deed in question here, but we
think it of too recent date to prove itself. It was executed
in 1888, but little more than sixteen years before the com-
mencement of this action, and there is nothing shown of the
surrounding circumstances, save only lapse of time, which
tends to prove the truth of its recitals. But sixteen years,
where lapse of time alone is relied upon, is too short a
period to raise a presumption that such recitals are true.
So far from raising a presumption that the persons who have
knowledge of the facts are dead, or that no probability ex-
ists that they could be found if living, the presumptions
would be rather the other way; that is, there is a greater
probability that some of these witnesses are still living and
can be found than there is that they are all dead or have
disappeared. Nor does a lapse of time so short furnish a
presumption that the rights of adverse claimants, if any there
are, are barred by the statute of limitations. In this case,
for example, had there been a minor under the age of fourteen
years at the time this deed was executed entitled to share in
the property, his right to recover would not have been barred
at the time this action was commenced, had sole and exclu-
sive possession of the property been taken by the grantee
named in the deed. But, without attempting to further
elucidate the question, we are convinced that the court erred
in holding that the respondent had shown such title in them-
selves as to warrant a judgment of ejectment against the
appellants.

Since, however, the parties are before the court, the contro-

versy between them may as well be settled in this action as in another, and to permit it to be so settled we will not direct that the action be dismissed, but will direct that it be reversed, and remanded with instructions to grant leave to the parties to offer further evidence, provided they apply for such leave within thirty days after the remittitur from this court reaches the court below. If no such application is made, the cause will be dismissed without cost to either party. Neither party will recover costs in this court.

MOUNT, C. J., HADLEY, RUDKIN, CROW, DUNBAR, and ROOT, JJ., concur.