[No. 7107.   Decided October 3, 1908.]

ESTHER JANE MORGAN, *Respondent,* v. NORTHERN PACIFIC RAILWAY COMPANY *et al., Appellants.*[1]

ADVERSE POSSESSION — HOSTILE CHARACTER OF POSSESSION — EVIDENCE—SUFFICIENCY. The evidence is insufficient to establish title by adverse possession, but shows plaintiffs to have been mere squatters without claim of right or color of title, where it appears that the plaintiffs, husband and wife, at the time of trading off an interest in land in section 14 for a saloon, in 1883, were told by their vendee to go upon and build a house upon section 15, which was vacant railroad land; that they did so and made improvements and occupied the land until 1899, when ordered off by the railroad company, whereupon they applied for its purchase; that in view of their occupation and improvements, the company consented to sell the surface of the improved portion, reserving the coal deposit, and the plaintiffs, without making any claim to the land by reason of adverse possession, agreed to buy such portion for $400, paying $200 down and $200 later when deed was delivered therefor, four years prior to the bringing of suit to quiet title to the entire tract, including the coal deposits.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered May 10, 1907, upon findings in favor of the plaintiff, after a trial before the court, in an action to quiet title. Reversed.

*Carroll B. Graves* and *Charles H. Farrell,* for appellants.

*John W. Roberts* and *Maurice D. Leehey,* for respondent.

[1]Reported in 97 Pac. 510.

Mount, J.—This appeal is from a decree of the lower court declaring the plaintiff to be the lawful owner of certain lands, in King county, described as the northeast quarter of section 15, township 21 north, range 6 E., W. M., and decreeing that her title be quieted thereto, and enjoining and restraining all of the defendants, except the Pacific Coast Company, from entering upon said lands and from conducting mining operations thereon and from extracting coal or mineral therefrom.

The action was commenced in the superior court of King county, in December, 1904. The complaint alleged, that the plaintiff was, and had been at all times therein mentioned, the wife of one Timothy Morgan; that on May 7, 1904, the plaintiff and her husband were the owners in fee and lawfully seized of the described lands, and had resided continuously thereon since prior to July 14, 1886, and during all of said period held and occupied the same, together with all ores, coal, and other mineral beneath the same, actually, openly, exclusively, continuously, notoriously and adversely during all of said period, under claim of right and color of title, made in good faith; that on May 7, 1904, the said Timothy Morgan granted and conveyed to plaintiff, as her sole and separate property, all of his right, title, and interest in and to said lands, and that ever since said date the plaintiff and her family have continued to reside upon said lands, and she has continued in sole and exclusive possession of said land as the owner in fee thereof and as her sole and separate property, and that the defendants wrongfully and unjustly claim some estate or interest in and to said lands; and prayed judgment that her title might be quieted by the decree of court.

The defendant Joseph Krans, named in the complaint, was not served with process. The defendant Timothy Morgan, by answer verified on December 15, 1904, filed May 1, 1907, after the trial of the case, admitted all the allegations contained in the complaint, and consented that the judgment

31—50 WASH.

might be rendered as prayed for. The defendant Farmers' Loan & Trust Company defaulted, and its default was duly noted.

The four defendants who are appellants here answered, and by denials traversed the material issues tendered by the complaint. The Northern Pacific Railway Company and the Northwestern Improvement Company further alleged, that the land in controversy was granted to the Northern Pacific Railroad Company under the Congressional act of 1864, which granted to said railroad company certain lands in aid of the construction of its railroad from Lake Superior to Puget Sound; that subsequently patent was issued to said railroad company, and that in the year 1895 said tract of land was conveyed to the Northern Pacific Railway Company; that in the year 1899, while plaintiff and defendant Timothy Morgan were husband and wife, they made certain claim to the tract of land, and that such claim was a mere squatter's right upon not to exceed twenty acres of land which they claimed to have jointly occupied; that this right was disputed by the Northern Pacific Railway Company; and that a settlement was agreed upon whereby the superior title of the railway company was recognized and acknowledged, upon the basis and consideration that the railway company sell and convey a certain portion of said lands, as set forth in a contract thereto attached and marked "Exhibit 1;" that said contract provides for the sale of the surface of the east half of said tract of land, reserving all coal or iron deposits to the railway company, and that the said Morgans were to pay $400 therefor, $200 at the date of contract and $200 one year thereafter, said contract being dated the 25th of October, 1899.

The answer further alleged, that said written contract was executed by Timothy Morgan acting for himself and the plaintiff; that plaintiff was present at the time of the settlement and at the time of the contract, and expressly consented and agreed to the settlement and all the terms thereof; that

the said Morgans have since occupied and used the surface
of said land under and by virtue of said contract and sale
thereunder; that, after the date of said contract, the North-
ern Pacific Railway Company sold the west half of said land,
and the coal underlying the east half of the land, to the
Northwestern Improvement Company, and the Northwestern
Improvement Company thereafter leased the right to mine
the coal to the Black Diamond Coal Mining Company, and
thereafter the said Black Diamond Coal Mining Company
assigned such lease to the Pacific Coast Company; that ever
since the making of the contract with the Morgans, the
Northern Pacific Railway Company, and its several succes-
sors in interest, have been in the possession of the coal under-
lying said land, and have ever since mined the same with the
knowledge and consent of the plaintiff.

The Black Diamond Coal Mining Company and the Pacific
Coast Company pleaded adverse possession by themselves
and predecessors in interest for the statutory period. The
reply denied all of the affirmative allegations contained in the
answers of these four defendants. The cause was tried in
October, 1906, and in May, 1907, the court made its findings,
to the effect that the plaintiff was the owner in fee of the
whole of the northeast quarter of section 15, township 21,
north of range 6, E., W. M., by adverse possession and claim
of right, and a decree was entered as above stated.

We have carefully considered all the evidence in the case,
and the facts as they appear are, in substance, as follows:
The Northern Pacific Railroad Company acquired the legal
title to the land in dispute under United States grant of
1864. The map of definite location was filed in 1884. Patent
was issued in 1894, and in 1896 the Northern Pacific Railroad
Company conveyed title to the Northern Pacific Railway
Company. In the year 1883, the plaintiff's husband, Tim-
othy Morgan, was working for the Black Diamond Coal
Mining Company, on section 14, directly east of section 15
above mentioned. At that time Timothy Morgan had filed a

homestead on a portion of section 14. In the year 1883, Timothy Morgan traded his interest in section 14 for a half interest in a saloon at Black Diamond.

One Ben Jones, superintendent of the Black Diamond Coal Company, told Mr. Morgan to move onto section 15, which was then vacant land, and that he, Jones, would give Morgan sixty dollars to help build a house on the land. Jones gave Morgan the sixty dollars, and Morgan built a house and moved his family on the northeast quarter of section 15, in July of 1883. He afterwards cleared and cultivated a portion of the land, and built other houses and a barn, and fenced the portions cleared. These improvements and nearly all of the clearing were done upon the east half of the quarter section.

In the year 1899, the railroad company discovered that Mr. Morgan and his family were occupying the land and improving the same, and thereupon notified them that they must vacate the land. In response to this notice, Mr. and Mrs. Morgan went to the office of Mr. Cooper, western land agent of the railroad company, in the city of Tacoma, and discussed the improvements they had placed upon the east eighty acres, and requested the right to purchase the whole quarter section. They were informed by Mr. Cooper that the land was coal land and was not for sale; but Mr. Cooper stated that he would recommend to his company the sale of the surface of the east eighty acres at $5 per acre, in view of the residence, occupation, and improvements of the plaintiff upon the land; but would reserve the coal and iron. Mr. Cooper made this recommendation to his company, and received authority to sell the east eighty acres to the Morgans at $5 per acre. This was satisfactory to the parties; and on October 25, 1899, Mrs. Morgan paid $200 down and Mr. Morgan signed a written application for the purchase of the east eighty acres of land in question, without the coal and iron and right to mine same, and on the same day a written

contract of sale was prepared in the office of Mr. Cooper and was signed by Mr. Morgan. A duplicate was made out, and a few days later was mailed from Mr. Cooper's office to Mr. Morgan at Black Diamond, and on November 10 Mrs. Morgan wrote and mailed to Mr. Cooper the following letter:

"Nov. 10th, '99.             Black Diamon, Wash.
"Mr. T. Cooper,
    "Western Land Agent N. P. Ry. Co.
"Sir: Have read the one year contract you forwarded me, in regard to the land mention in said contract, and come to the conclusion not to sign it as I think it not necessary for me to do so. I will pay the balance due on the said land in six months or before if it is necessary.
"Please let me know by mail when will you can grant me a deed for the said 80 acres or for the 160 acres, as mention. before at your office.
        "Respect yours,
                "Timothy Morgan,
                "Black Diamond, Wash."

Thereafter, on October 23, 1900, Mr. and Mrs. Morgan paid the balance due on the contract, and on the next day a deed was executed by the railway company for the east half of the northeast quarter of section 15, township 21 north, range 6 E., W. M., to Timothy Morgan, but reserving the coal and iron and the right to mine the same. Subsequently, in the year 1904 and just prior to this suit, Timothy Morgan deeded all his right to the northeast quarter of section 15 to his wife, who thereupon brought this action.

There is a dispute in the evidence as to what occurred in Mr. Cooper's office on October 25, when the plaintiff and her husband entered into the contract to purchase the northeast eighty acres of section 15. The plaintiff and her husband testified that they claimed the whole quarter by reason of adverse possession, and purchased only to avoid a lawsuit, and that she refused to let her husband sign the contract because of the reservation of coal and iron; while, on the other hand, Mr. Cooper testified, and was corroborated, to

the effect that no such claim was made; that both plaintiff and her husband recognized the right of the railway company, and requested only the right to purchase by reason of the improvements and long-continued residence thereon, and that they made no objection to signing the contract until the letter above quoted was received. It was known at that time, and long prior thereto, that the lands were coal lands and chiefly valuable as such. In the letter which was written by Mrs. Morgan at the time of the negotiations, no claim is made that she or her husband had any interest in the land by reason of adverse possession. Her reason for her husband not signing the duplicate was stated as because "I think it not necessary for me to do so. I will pay the balance due on the land in six months, or before if it is necessary." It was afterwards paid. We think this conclusively shows that the prior occupation of the land was not with the intent of claiming it adversely to the true owner, but that the plaintiff and her husband were mere squatters upon it, without claim of right or color of title. Such possession is not sufficient to base a title of adverse possession upon. *Lohse v. Burch*, 42 Wash. 156, 84 Pac. 722; *Blake v. Shriver*, 27 Wash. 593, 68 Pac. 330.

It is true, Mr. Morgan testified that, at the time he traded his land in section 14 for a half interest in the saloon in Black Diamond, Mr. Jones, the superintendent of the Black Diamond Coal Mining Company, told him to go upon section 15, and furnished him $60 toward building a house; and also that Mr. Jones told him the Black Diamond Coal Company was going to give him this piece of land. But the evidence was apparently so confused upon this point that we give it no weight. The deed from Mr. Morgan to his wife conveyed to her no greater interest in the land than both together had. It was an apparent effort to escape the consequences of Mr. Morgan alone signing the application or contract to purchase in the year 1899. The plaintiff and her husband were together at that time, and acted together dur-

ing the whole transaction at which the eighty acres were sold to them by the railway company. In fact, Mrs. Morgan herself paid the money and wrote the letter above set out, and was equally bound with her husband, even if she did not actually sign the contract. We are convinced that the bringing of this action was an afterthought, and that neither the plaintiff nor her husband had any thought of claiming or holding any part of the property from the railroad company until long after they had purchased the east eighty acres. Substantially all the improvements made by them are shown to have been on the part they purchased. They, of course, have clear title to the eighty acres improved and purchased by them, subject to the reservation of coal and iron, but they have no legal claim to the west eighty acres of the northeast quarter of said section 15.

The judgment of the lower court is therefore reversed, and the cause ordered dismissed.

HADLEY, C. J., CROW, RUDKIN, and ROOT, JJ., concur.