[No. 9572. Department One.    April 17, 1912.]

## NORTHERN PACIFIC RAILWAY COMPANY, *Petitioner*, v. MARION SMITH *et al.*, *Respondents.*[1]

APPEAL—RECORD—STATEMENT OF FACTS—SERVICE. On appeal from a judgment entered January 7, the mailing of a proposed statement of facts on February 6 in ample time to reach its destination on the same day is a sufficient service within the thirty days limited by law.

EMINENT DOMAIN—APPEAL—NECESSARY PARTIES—NOTICE. On appeal from a judgment awarding to claimants the money deposited for the land condemned, service of the notice of appeal need only be made upon the parties appearing and claiming the deposit.

ADVERSE POSSESSION—EVIDENCE—SUFFICIENCY. Testimony of a witness that one S. was in possession of real estate in 1900, but that witness did not know of his own knowledge anything about the possession prior to 1902, is insufficient to show actual, open, and continuous possession under a claim of right for ten years prior to April 22, 1900; as the same does not show possession for the required time, and is not reasonably direct and certain as to all the requisite elements.

DEEDS—TITLE CONVEYED—INTEREST OUTSIDE CHAIN OF TITLE. A connected title from the government is not shown, where the patent was to the heirs of the original entryman, there appearing to be two sons, and the title in question was derived from only one of them.

ADVERSE POSSESSION—TITLE—TAX TITLE—PRESUMPTION. Since an action to quiet title is the remedy against one out of possession, where an action of ejectment to oust one claiming under a tax title was dismissed, there is a presumption that the tax claimant was in possession and that the tax title had not lapsed, the tax deed being regular on its face and admitted in evidence without objection.

TAXATION—TAX DEED—VALIDITY—DESCRIPTION — CLERICAL ERROR. A reference in a tax deed describing land in Cowlitz county as being

[1]Reported in 122 Pac. 1057.

in township 10 west, instead of 10 north, is manifestly a clerical error which would not invalidate the deed.

EXECUTION—SALE—TITLE ACQUIRED.  Where land was sold under execution in an action against a defendant who had no title or interest in the property, the purchaser acquired no interest by virtue of the sale.

ADVERSE POSSESSION—ESSENTIALS—LIMITATIONS — EVIDENCE.    To obtain title by adverse possession and the payment of taxes for seven years, the possession must be shown to be actual, open, and notorious under claim and color of right made in good faith; and it is not sufficient to show mere possession at one time, and payment of taxes and color of title for seven years.

Appeal from a judgment of the superior court for Cowlitz county, McMaster, J., entered January 7, 1911, upon findings in favor of certain defendants, after a trial on the merits before the court without a jury, in an action to determine the ownership to money paid into court under an award in condemnation proceedings.   Reversed.

*B. L. Hubbell,* for petitioner.

*Jos. O'Neill* and *Miller, Crass & Wilkinson,* for respondent Gruber Lumber Company.

FULLERTON, J.—On April 22, 1910, the Northern Pacific Railway Company instituted proceedings to condemn for railroad purposes certain land lying in lots numbered 4, 5, and 8, in section 27, and lot numbered 2, in section 34, all in township 10, north, of range 2, west of the Willamette meridian, making parties to the proceedings all persons appearing of record as having an interest therein.   The proceedings were prosecuted to a termination, and resulted in an order allowing a condemnation and appropriation of the land on the payment into court for the owners the sum of $25,000. This sum was paid into court, and a decree of condemnation and appropriation entered.

The land out of which the appropriation was made was settled upon by one James Gardiner on July 29, 1852.   On March 17, 1855, he notified the register and receiver of

Washington Territory of his settlement thereon and of his intent to donate the same under the act of September 27, 1850, commonly known as the Oregon Donation Act. On September 29, 1856, James Gardiner, by quitclaim deed, conveyed the land to William Pumphrey and William A. Gardiner. In 1857, William A. Gardiner conveyed an undivided half interest in the land to Charles Bishop, and in 1858 Pumphrey conveyed a one half interest therein to Thomas Jefferson Carter. Patent was issued for the land in August 27, 1871, to the "heirs at law of James Gardiner, deceased, late of Cowlitz county, Washington Territory." The heirs are not named individually in the patent, but in an affidavit accompanying his notification, James Gardiner swears that he is a widower, and that his heirs at law are his "two sons, James Alexander Gardiner and William A. Gardiner." In July 1872, the land was sold by the sheriff of Cowlitz county, under a warrant directing him to sell the same for delinquent taxes, to L. P. Smith, and a deed to Smith for the same was executed on March 29, 1877. In 1879, T. J. Carter conveyed an undivided half interest in the property to W. V. Smith.

In 1884, Charles Bishop began an action against L. P. Smith to eject him from the premises. Issue was taken on his complaint and a trial had, which resulted in judgment to the effect that the plaintiff take nothing by his suit, the court holding that the plaintiff was without title to the land. In 1890, the land was sold by the sheriff of Cowlitz county to William Pumphrey, under an execution and order of sale issued out of the superior court of Lewis county in an action wherein Daniel Marx and Emil C. Jorgensen were plaintiffs and G. F. Richards was defendant. On February 1, 1900, Charles Bishop conveyed, by quitclaim deed, all his right, title and interest in the property to W. A. Gardner, and on the same day Gardner conveyed the same to C. A. Sturm and Harriet E. Flack. On June 23, 1900, the land was sold to C. A. Sturm, as property belonging to the estate of William

Pumphrey, deceased. From C. A. Sturm and Harriet E. Flack, the land passed by regular mesne conveyances to the respondent Gruber Lumber Company.

The record shows that the taxes on the land since 1900 have been paid by the Gruber Lumber Company and its predecessors in interest, the taxes for 1900 being paid in 1902, and the taxes for 1901 and 1902 being paid in 1903. Since 1903 they have been paid yearly prior to delinquency.

Relative to the possession of the property, the evidence shows the following:

"C. E. Forsyth, being called as a witness for petitioner Gruber Lumber Company and being first duly sworn, testified as follows:

"Direct examination. Questions by Mr. Joseph O'Neill: Q. Where do you live, Mr. Forsyth? A. At Castle Rock, in this county. Q. Are you acquainted with the premises known as lots 4, 5 and 8 of section 27, and lot 2 of section 34, T. 10 north, of range 2 west, Willamette Meridian, in this county? A. I am. Q. Who was in possession of those premises in 1900? A. Mr. C. A. Sturm, or the Sturm Brothers. Q. Did they claim to own it? A. Mr. Sturm showed me a deed to it. Q. How long was Sturm Brothers in possession of it? A. Until 1904. They deeded it to me in 1902—they deeded it to the Kelso State Bank for me. It was made that way because I owed the Kelso State Bank and the deed was made that way to secure the bank. We gave them a contract by which they were to pay a sum of money and it would be deeded back to them, but they didn't pay it. I extended the time for them to pay until 1904, but they didn't pay and they turned the property over to me in 1904. The bank had deeded the property to me. Q. Who had possession after that? A. I had. Mr. Swift had possession in 1907 and 1908 under a contract to purchase, but he didn't purchase it so I sold it to Gruber Lumber Company and they have had possession since that, at first under a contract, and after that by a deed. Q. Were you acquainted with Mr. L. P. Smith in his lifetime? A. Yes. Q. Did he ever claim to you that he owned this property? Objection by Mr. Hubbell. The Court: Is there a claim that Mr. Smith claimed by adverse possession? Mr. O'Neill: No.

The Court: Then I cannot see where it is material whether Mr. Smith made a claim that he owned the property or not. Objection is sustained. . . . Cross-examination. Questions by Mr. Hubbell: Q. You live at Castle Rock, about 4 miles from this land, do you not? A. Yes. Q. And you do not see this land very often do you? A. I go up there once in a while, sometimes quite often. Q. You do not know anything about the possession of this property of your own knowledge previous to the time you loaned money to the Sturms in 1902, did you? A. No, I did not. Q. Do you know whether or not Mr. Sturm had any arrangement with Mr. Smith by which Mr. Smith allowed Mr. Sturm to have possession of this land? A. No, I do not know."

Three several distinct claims were made to the money deposited by the railroad company as the purchase price of the land taken. The first was made by the Gruber Lumber Company, who claimed in virtue of its deeds from Sturm and Flack, its possession of the property, and in virtue of having paid taxes thereon for more than seven successive years. The second claim was made by the heirs of L. P. Smith, who claimed title in virtue of the tax deed made by the officers of Cowlitz county to their ancestor. The third was made by C. A. Sturm and Harriet E. Flack, who claimed that the title to the property had rested in them subsequent to their purchase in 1900, contending that their conveyance to the predecessors in interest of the Gruber Lumber Company were given to secure a money advancement, and for that reason constituted mortgages. The court held that the Gruber Lumber Company owned the land at the time of the condemnation proceedings, and awarded it the money deposited, finding "that the Gruber Lumber Company, through its grantors, have had possession of the land since the year 1900, and now is, and at the time said right of way was taken by plaintiff was, the legal owner of said land, and by reason thereof is entitled to receive the money paid into court for the right of way appropriated for the same." From the order, the heirs of L. P. Smith have appealed.

The Gruber Lumber Company moves to dismiss the ap-

peal for the reasons, first, that the proposed statement of facts was not filed and served within the time limited by law; and, second, that the notice of appeal was not served upon all of the parties to the original suit by the railway company.

The motion is without merit. The judgment awarding the money deposited to the Gruber Lumber Company was entered on January 7, 1911. The proposed statement of facts was filed on February 4, 1911, and a true copy thereof mailed at Kelso, Washington, addressed to the attorney for the prevailing party, at Castle Rock, on February 6, 1911, in "ample time to reach its destination on the same day." This was a sufficient service. *Bank of Shelton v. Willey*, 7 Wash. 535, 35 Pac. 411. As to the second ground of the motion, it is sufficient to say that the appellant was only obligated to serve with the notice of appeal the parties appearing and claiming the money deposited in court. These the appellant did serve.

On the merits of the controversy, it seems to us clear that the judgment cannot rest on the ground upon which the trial court placed it. We have quoted all of the testimony in the record concerning the possession of the property by the Gruber Lumber Company and its predecessors in interest. It will be observed that if we take the direct testimony at its full face value, it still leaves it uncertain as to the length of time possession of the property has been held by the Gruber Lumber Company and its grantors. The witness sworn says that C. A. Sturm, or the Sturm brothers, were in possession of the property in 1900, but does not say that they were in possession for the entire year, while to constitute ten full years prior to the commencement of the condemnation proceedings, such possession must have commenced prior to April 22, 1900. Again, in his cross-examination, he makes it clear that he was testifying in part from hearsay, as he says he did not know anything about the possession of the property of his own knowledge prior to the year 1902. This court has frequently held that adverse possession sufficient

to ripen into title must be actual, open, notorious and continuous, and be under a claim of right or color of title. *Lohse v. Burch*, 42 Wash. 156, 84 Pac. 722, and cases cited. Here, then, is no evidence whatsoever as to the character of the possession held by the claimants, even if we concede it to be for a sufficient length of time. It is not even said that the possession was actual, much less that it was open, notorious, and continuous. Evidence sufficient to show adverse possession of real property must be reasonably direct and certain as to all the elements necessary to constitute such possession. It is not sufficient to show merely that the claimant has been in possession for the required time. The nature of the possession must be shown so that the court can know that it has been of such a character as to constitute adverse possession. The proofs offered here are deficient in these respects, and are insufficient to show adverse possession under the rule as we have laid it down.

But the case is here for trial *de novo*, and if the facts are sufficient to support the judgment it must be upheld, even though it cannot stand on the ground on which it was based by the trial court. Turning to the record, it is manifest that the Gruber Lumber Company has not a connected title from the donee of the United States to the whole of the property, even if we ignore the tax title of L. P. Smith and assume as valid all of the intervening deeds from Gardiner to Sturm. For if we assume that James Gardiner completed a four-years' residence upon the land and was thus entitled to convey prior to the issuance of patent, only an undivided half interest in the land reached C. A. Sturm from that source. On the other hand, if we assume that only the patentees could convey the legal title, and further assume that the W. A. Gardner who conveyed to Sturm in 1900 was the William A. Gardiner whom James Gardiner made oath was his son and one of his heirs, his deed would convey but a half interest in the property, as it is shown there was still another son who was entitled to a half interest in the property when

patented, and whose interests were not thereby conveyed.

But we are unable to find anything in the record that warrants us in holding the tax deed void. The trial court in its findings stated that no possession was taken under it and that it had lapsed. But the fact recited is contrary to the record, as the abstract shows an action of ejectment begun by one of the grantees of James Gardiner to oust the purchaser therefrom, in which the plaintiff was unsuccessful. This presupposes possession under our practice, as the remedy against one wrongfully claiming title to land of which he is not in possession is a suit to remove a cloud from title or to quiet title, and not ejectment. The conclusion that the title had lapsed is also unfounded. If the tax sale was valid, it passed the fee to the land, and creates a title no more subject to lapse than is a title acquired by other valid conveyances. The tax deed itself fulfills the requirement of the statute as to what it shall contain, is regular on its face, and was admitted in evidence without objection. Notwithstanding the proceedings leading up to the sale were not shown, we think we are required to give the deed full faith and credit and hold it sufficient to vest in the person to whom it was executed the full title to the property sold. True the deed described the land as being in "township 10 west" instead of "township 10 north," but the error is so manifestly clerical that the validity of the sale cannot be affected by it. More than this, the land is also described as the "Gardiner Donation Claim," which is also sufficient to identify it as the land in question here.

Nor do we think any effect can be given to the sale under the execution issued in the case of Marx & Jorgensen v. Richards. The record fails to show any title or interest in the land in Richards whatsoever, and no such title or interest can be presumed from the mere fact that the land was sold under execution as his property. It follows as of course that if Richards had no interest in the property none could be acquired by the purchaser at such sale.

But it is argued that the Gruber Lumber Company has acquired title by reason of the seven-year statute of limitations relating to possession and the payment of taxes. But to acquire title under this section of the statute, the claimant must have had actual, open and notorious possession of the land under claim and color of title made in good faith for seven successive years, and must have paid all taxes legally assessed thereon during such time. Undoubtedly the Gruber Lumber Company has proven that it has paid the taxes on the land for the period required, and has had color of title to the same for a like period, but it has utterly failed to show such a possession as the statute requires. It has not shown the nature or character of its possession, it has not shown that the same was actual, or open, or notorious, nor has it shown any fact from which the character of its possession can be inferred. The fact that the proofs are deficient in this respect seems to us significant. Evidence of the actual character of the possession maintained by the company and its predecessors in interest was assuredly within the reach of the company, and the fact that it was not produced leads to the conclusion that no such possession was maintained as would comply with the requirements of the statute.

Nor can title be successfully claimed under the section of the statute relating to vacant and unoccupied land. The proofs offered fail utterly to meet the requirement of this section.

Since, therefore, there is nothing to impeach the title acquired by L. P. Smith at this tax sale, it follows that his heirs are now, and were at the time of its condemnation by the railway company, the owners of the property condemned, and that they are entitled to the money deposited as the purchase price of the same.

The order appealed from is reversed, and the case is remanded with instructions to enter an order directing the money to be paid to the heirs of L. P. Smith, deceased.

DUNBAR, C. J., and PARKER, J., concur.