[No. 12718.   Department One.   June 1, 1916.]

MARION SMITH et al., *Respondents*, v. C. A. DOTY et al., *Appellants*, C. A. DOTY et al., *Defendants.*[1]

FRAUD—MONEY RECEIVED—PAYMENT OF DEBT—FRAUD UPON CREDITORS—EVIDENCE—SUFFICIENCY. In an action to trace and recover funds placed by judgment debtors beyond the reach of creditors, findings that the debtors made payments and assigned stock without consideration in fraud of creditors are not sustained, where plaintiffs were obliged to depend upon the testimony of the defendants, which tended to show a consideration in the settlement of past debts and there was no evidence of bad faith except from the inferences arising from the relationship of the parties, and the assignee of the stock purchased in good faith without notice of the fraud; as clear and convincing evidence of the fraud is necessary.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered March 8, 1915, upon findings in favor of the plaintiffs, in an action for money had and received, tried to the court. Reversed.

[1]Reported in 157 Pac. 881.

*Hayden, Langhorne & Metzger,* for appellants.

*B. L. Hubbell* and *Richard Sleight,* for respondents.

FULLERTON, J.—On April 22, 1910, the Northern Pacific Railway Company instituted proceedings in the superior court of Cowlitz county to condemn for railway purposes certain lands situated in that county. Among the parties made defendant to the proceedings, were the respondents in the present action and the Gruber Lumber Company. The proceedings resulted in an order allowing a condemnation and appropriation of the lands on the payment into court for the owners of the sum of $25,000. This sum the railway company paid into court as directed, and a decree of condemnation and appropriation was duly entered. After the money had been so paid, it was claimed by the respondents on the one side and by the Gruber Lumber Company on the other. Issues were framed between the parties and the right to the money tried out, resulting in a finding by the trial court that the money rightfully belonged to the Gruber Lumber Company, and in an order directing that the money be paid over to it. An appeal was taken from the order to this court, where it was reversed, and the cause remanded with instructions directing the money to be paid to the present respondents as the heirs of L. P. Smith, deceased. *Northern Pac. R. Co. v. Smith,* 68 Wash. 269, 122 Pac. 1057.

Prior to the appeal, no stay of the order having been given, the money was paid to the Gruber Lumber Company, and on the reversal of the order, the respondents were awarded, in lieu of the money, a judgment against the Gruber Lumber Company for the amount thereof. *State ex rel. Smith v. Superior Court,* 71 Wash. 354, 128 Pac. 648.

On the receipt of the money by the Gruber Lumber Company, the trustees of that company met and applied some $3,000 of the money to the payment of the debts of the company, and divided the remainder among the stockholders of the company in proportion to their respective holdings; one

J. M. Keen receiving $2,200, one W. W. Emery receiving $8,200, and one Martin J. Gruber $11,550. In garnishee proceedings instituted by the respondents against the stockholders named, subsequent to the distribution of the money, judgments were recovered against them severally for the amounts which they had each received. These judgments were affirmed by this court in *Smith v. Gruber Lumber Co.*, 81 Wash. 111, 142 Pac. 493.

An execution against the judgment debtors having failed to disclose any property subject to be sold in satisfaction of the judgments, the respondents instituted the present action against the judgment debtors, the Gruber Lumber Company, C. L. Doty, Joseph O'Neill and J. L. Gruber, in an effort to further trace the property. The trial court, from the evidence adduced at the trial, made the following findings of fact:

"(4) That immediately upon receipt of said sum of $25,000 by said Gruber Lumber Company from said superior court, on the 12th day of January, 1911, said defendants W. W. Emery and M. J. Gruber, acting as the board of trustees of said Gruber Lumber Company, within the time allowed by law for plaintiffs to appeal from said judgment of said superior court, and with the intent to place said sum of money beyond the reach of these plaintiffs and beyond the jurisdiction of the superior court, divided said sum of money among themselves, paying $2,200 thereof to defendant J. M. Keen, $8,250 to defendant W. W. Emery and $11,550 to defendant M. J. Gruber.

"(5) That in April, 1907, defendant M. J. Gruber was indebted to his father, defendant J. L. Gruber, in the sum of $2,700 and no more, and in April, 1909, defendant M. J. Gruber was indebted to the Coffman-Dobson Company bank in the sum of $950.

"(6) That in April, 1909, the amount of $950 owing to the Coffman-Dobson bank by defendant M. J. Gruber was included in a note for $8,754.74 given to said bank by defendant J. L. Gruber. From time to time thereafter defendant J. L. Gruber made payments on this note, and in Janu-

ary, 1911, there was a balance due on this note of $3,308.99, which balance defendant M. J. Gruber then paid.

"(7)   That previous to the payment of said balance to said bank, defendant M. J. Gruber was actually indebted to defendant J. L. Gruber in the sum of $4,593, which included the $2,700 owing in 1907, the $950 owing the Coffman-Dobson bank in 1909, and the interest thereon at the rate the same was paid to said bank. After paying the balance of $3,308.99 to said bank in January, 1911, M. J. Gruber was still indebted to his father, J. L. Gruber, in the sum of $1,284 and no more.

"(8)   That said payment of $3,308.99 made to said bank by defendant M. J. Gruber was from the sum of $11,550 taken by said M. J. Gruber as his share of the money belonging to plaintiffs herein. That in addition thereto the said M. J. Gruber, in January, 1911, under pretense of payment of indebtedness due his father, J. L. Gruber, at the request of the said J. L. Gruber, paid to defendant C. A. Doty the sum of $5,000, and at or about the same time the said M. J. Gruber paid directly to J. L. Gruber the further sum of $1,900, aggregating the sum of $6,900 paid to or on the direction of said J. L. Gruber, whereas in fact there was then owing by M. J. Gruber to J. L. Gruber but the sum of $1,284, and that M. J. Gruber thereby turned over to his father, J. L. Gruber, $5,616 in excess of what he was owing him; that this was done for the purpose of placing said money beyond the reach of plaintiffs herein.

"(9)   That said payments were made within the time allowed by law for plaintiffs herein to appeal from the decision of the said superior court, and were made and received with intent to place said money beyond the reach of these plaintiffs, and that the said M. J. Gruber is now and was at said time insolvent.

"(10)   That defendant W. W. Emery, from the sum of $8,250 received as his share of the $25,000 divided as hereinbefore set forth, purchased stock of the Emery-Nelson Company, a corporation in which defendant C. A. Doty was the principal stockholder, of the par value of $5,000, and paid therefor the sum of $5,000; that in order to place said stock beyond the reach of plaintiffs, on or about the 17th day of April, 1912, immediately upon the reversal by the supreme court of the judgment of the superior court awarding the

said sum of $25,000 to the Gruber Lumber Company, as said reversal is hereinafter set forth, defendant W. W. Emery assigned said stock to defendant C. A. Doty; that said assignment was without consideration and was accepted by the said C. A. Doty with intent to place said stock beyond the reach of these plaintiffs; that said stock was of the value of $1,250 at the time of said assignment; that defendant W. W. Emery was then and is now insolvent."

Judgment was entered against J. L. Gruber and C. L. Doty according to the findings, and this appeal is prosecuted therefrom.

Certain preliminary questions going to the right of the respondents to prosecute the action in the form adopted are suggested by the appellants. These, however, we do not find to be fatal to the proceedings and, owing to the conclusions we have reached on the merits of the controversy, will not be further noticed.

The respondents found it necessary to rest their case as to the facts not of record on the testimony of their opponents. The evidence on which the judgment against J. L. Gruber is based is found in that given by himself and by Martin J. Gruber. In substance it is this: J. L. Gruber and Martin J. Gruber bore the relationship of father and son. In 1907, Martin J. Gruber joined with W. W. Emery and others in the incorporation of the Gruber Lumber Company, subscribing for eighty shares of its capital stock, which had a par value of $100 each. To obtain means to make his initial payment on his stock subscription, he, together with his father, gave a note to Coffman, Dobson & Company, bankers, doing business at Chehalis, Washington, for $12,500. Of this sum Martin took to his own use $6,000, and his father the remainder. From time to time after the execution of the note, J. L. Gruber paid principal and interest thereon aggregating something more than $7,000, and more than his share of the obligation. Martin made no payments on the obligation at all. In the meantime, he, together with W. W. Emery, had executed additional notes to the bank for money borrowed

which his father had signed as surety. On the day last named, the total of the indebtedness, that is, the amount owing by Martin on the original note of $12,500, and the amount owing on the notes executed by himself and Emery on which his father was surety, aggregated $8,754.74. For this sum a new note, payable on demand, was given Coffman, Dobson & Company, signed by the three persons named. It was testified by Martin that Emery's obligation to the banking house was about $1,000, being one-half of two notes aggregating $1,950 on which some interest had accumulated; and both Martin and his father testify that the remainder of the obligation was wholly the obligation of Martin, the father having satisfied all that was justly due from him by his payments on the original note. Both Martin and the father testify also that the father had, prior thereto, made other advancements to Martin, one of which at least was of considerable magnitude (some $2,700 used for the purchase of a sawmill), and that the father had agreed to forgive the indebtedness to Martin if he would pay the obligation last given the banking house.

The requirements of the lumber company seemingly exhausted its earnings, and neither Martin nor Emery made any payment on the note prior to the receipt of the money paid by the railroad company in the condemnation proceedings. The father, however, at the demand of the bank, had made numerous payments thereon. These aggregated, at the time last mentioned, the sum of $6,251.66, leaving a balance. due of $3,308.99. After the receipt of the share assigned him of the money paid in the condemnation proceedings, Martin forthwith paid to the banking house of Coffman, Dobson & Company the balance due upon the note, and paid to C. A. Doty, at the request of his father, the sum of $5,000, for which Doty gave to the father his written obligation. Shortly thereafter, M. J. Gruber paid directly to his father, on a settlement had between them, some $1,250, the precise sum

neither remembered with exactness, although both testify that it was not more than was due the father for the sums he had paid on the note of $8,754.74 given the banking. house of Coffman, Dobson & Company, after deducting the $5,000 advanced to Doty.

After payment of the last named note to the bank, Martin J. Gruber collected from W. W. Emery his share thereof, estimated at $1,000, and this sum, together with the balance of the money he received in the division of the proceeds of the condemnation proceedings, he appropriated to his own use.

The judgment of the court with reference to the stock transaction is founded principally on the testimony of W. W. Emery. Mr. Emery testified that, on the receipt of the money paid over to him as his share of the money received in the condemnation proceedings, he, together with the appellant C. A. Doty and one Herman Nelson, organized and incorporated the Emery-Nelson Lumber Company, which was capitalized at $150,000, the capital stock being divided into 1,500 shares of the par value of $100 each. The incorporators subscribed for the stock in equal shares, and each paid into the concern $5,000 and received an issuance of stock at its par value to that amount. The corporation, after its organization, took over a lumber plant owned by one Hamilton Pitcher and assumed an indebtedness thereon of $150,000. Later on, probably in June or July of 1912, Emery traded his stock to the appellant Doty, receiving as a consideration therefor a tract of land containing between three and four acres on which was situated a dwelling house of the value of about $1,000. Emery testified further that he was without means to pay the balance of his subscription to the capital stock of the Emery-Nelson Lumber Company, and that the stock which had been issued to him and which he had traded to Doty was worth at that time probably twenty-five cents on the dollar.

It was further shown that C. A. Doty and W. W. Emery were sons-in-law of the appellant J. L. Gruber, and that the social and domestic relations existing between their several families "were extremely cordial and intimate." It was shown, furthermore, that at some time prior to the incorporation of the Gruber Lumber Company, the father acquired two certain tracts of land for which he took title in the name of the son, and that these were transferred to purchasers subsequent to the time the appeal was taken from the order of the trial court awarding to the Gruber Lumber Company the moneys paid by the railway company in the condemnation proceedings, although prior to the decision of this court reversing that order, the proceeds of which were taken by the father. It appears from the testimony, also, that the father is a man of means, that he has always taken a keen interest in the welfare of the different members of his family, and that he has from time to time made advancements in money to their use for which he has exacted no very strict accountings.

It is our conclusion that the evidence furnishes no justification for the findings and judgment of the trial court. The figures adopted by the court with relation to the transaction between father and son are purely arbitrary. There is nothing in the record from which the several amounts found to be owing at the different times mentioned in the findings can be deduced. Under the evidence, the note of $8,754.74, given to the banking house of Coffman, Dobson & Company, was either the note of Martin J. Gruber, as the parties testified it to be, or it was the joint note of the three persons who signed it, as the law, in the absence of a showing to the contrary, will presume it to be. Either conclusion requires a different judgment from that entered by the court. If the note was the obligation of the father, the payments of the son thereon and to the father on account thereof were wholly voluntary, and a much larger judgment should have been entered against the father. If the note was the obligation of the three persons who executed it, the judgment against

the father is too large, as the difference between the amount
he actually paid on the note and the sum he would then have
been obligated to pay, deducted from the amount the son paid
to him, would not equal the amount of the judgment.

Nor can we think that the evidence justified the conclusion
that the settlement between the father and son was not made
in good faith. It will be remembered that the settlement was
made and the money paid over immediately after the trial
court had decided that the money paid in the condemnation
proceedings was the money of the Gruber Lumber Company,
and before any appeal had been taken therefrom. The only
evidence in the record on the question at all, aside from the
inferences arising from the relationship of the parties, is the
inference of bad faith that arises from the fact that the par-
ties knew the order was an appealable order and may have
anticipated an appeal therefrom and a reversal of the order
in the appellate court. But fraud must be proven by clear
and convincing evidence, and any inference that might arise
from these circumstances we cannot think amounts to the
dignity of such proof.

It may be well here to say that the parties conceded in the
court below that "if Martin J. Gruber was justly indebted
to his father in the amount claimed on January 12, 1911,
and that the payment thereof was made in good faith . . .
then a recovery cannot be had in this case," and that no dif-
ferent contention is made in this court.

Nor does the finding concerning the transfer of the stock
by Emery to Doty have any better foundation. There was
no material difference between the values of the property ex-
changed, nor did the exchange enable Emery to place his
property beyond the reach of the respondents. But more
than this, it was not shown that the respondent Doty par-
ticipated in the original transaction in any manner, or that
he even knew of the liability of Emery to account to the re-
spondents for the money which he used in the purchase of
the stock. The exchange being in good faith on his part,

he cannot be compelled to surrender the property received by him to the respondents and look for reimbursement from Emery. To recover the stock from him, knowledge on his part of the fact that the property was procured in fraud by Emery must be shown.

The foregoing considerations lead to the conclusion that the judgment appealed from must be reversed and the cause remanded with instructions to enter a judgment in favor of the appellants. It is so ordered.

MORRIS, C. J., MOUNT, CHADWICK, and ELLIS, JJ., concur.