[No. 4166.   Decided March 11, 1902.]

J. M. BLAKE, *Trustee, Respondent,* v. G. E. SHRIVER *et al.,*
*Appellants.*

27   593
34   418
e35   18

27   593
38   590

27   593
f39   36
e39   317

27   593
f42   160

ADVERSE POSSESSION — DISSEIZIN — SQUATTERS.

One who squats upon land which is in litigation between
other parties, erects a shanty thereon, intending it for tempo-
rary use as a residence, but continues his residence there for
more than ten years, does not thereby acquire such a title by
adverse possession as to bar an action for its recovery by the
true owner, since Bal. Code, § 4797, which provides that "no
action shall be maintained for such recovery unless it appear that
the plaintiff, his ancestor, predecessor, or grantor was seized or
possessed of the premises within ten years before the commence-
ment of the action," contemplates that the adverse possession
must be under some claim of right or title, or maintained after
disseizin of the original owner has been effected by hostile entry.

Appeal from Superior Court, Spokane County.—Hon.
GEORGE W. BELT, Judge.   Affirmed.

*F. P. Speck* and *Harris Baldwin,* for appellants.

*Graves & Graves,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This is an action of unlawful detainer.
The defendants (the appellants here), answering severally,
set up title in themselves to the land described in the com-
plaint, by virtue of their continuous, uninterrupted pos-
session thereof for ten years preceding the commencement
of the action.   The cause was tried by the court, a jury
being waived.   Findings of fact were made in favor of the
respondent, and judgment was rendered thereon for the
respondent, that he recover the property described in the
complaint.   From this judgment the appeal is taken.   A
brief statement of the facts is as follows:   In 1874 H. T.

Cowley settled upon 120 acres of land lying near the falls of the Spokane, and being within the limits of the grant to the Northern Pacific Railroad Company, and in 1876 entered into a contract with the company for the purchase of said land. Litigation ensued between the company and Cowley concerning the contract for the purchase of the land. This litigation was commenced in the territorial courts, and, on the admission of the territory to statehood, was transferred to the federal courts. The case in due process reached the supreme court of the United States, where it was determined in favor of Mr. Cowley, whereupon the company deeded the land to Cowley in 1898. In 1897 mineral locations were filed upon the land by certain persons, and a contest was waged in the land department with them upon the question whether the land was mineral or non-mineral. This contest was determined in 1900 by a decision of the department that it was non-mineral, and fell within the grant of the company. A patent for the land was issued in April, 1901, but its issuance was not known to the plaintiff until after the commencement of this action. When he obtained such information he filed a supplemental pleading, setting forth the facts relating thereto. Mr. Cowley during all of this time resided upon a portion of the 120-acre tract, claiming title to the whole by virtue of his contract with the railroad company. The town of Spokane grew around this land, which, owing to its being involved in the litigation which we have before mentioned, could not be sold. It possessed street railway facilities for communication with the business part of the city. Owing to its close proximity to the city, it was a desirable location for residences for working men; and in 1888 and thereafter the lots in controversy were settled upon by squatters, and shacks or shanties were erected for their occupancy. In two or three instances the original occupants

have retained their residence upon the lots until the present time, but in the great majority of the cases the squatter, when he desired to leave, would remove to another portion of the town or country and would sell his improvements to some other person; it appearing that nothing more than the value of the improvements was ever obtained at such sales. The appellants here, the defendants in the action below, were among those who squatted upon the land during the period mentioned. After the title to the land had become established, notice was given to the squatters to remove from the land, who refusing to do so, this action was brought. The respondent's title was based upon a deed from Cowley and wife to George Turner, R. B. Blake, W. M. Ridpath, and F. H. Graves for an undivided three-eighths interest in the land; a deed from all those parties conveying the title to the whole tract to R. B. Blake, as trustee; and an order of court substituting him as trustee upon the death of R. B. Blake.

The appellants base their right to the possession of this land upon §§ 4796 and 4798 of Ballinger's Code, which is what is commonly known as the "Limitation Act." Section 4797 is as follows:

"The period prescribed in the preceding section for the commencement of actions shall be as follows: Within ten years,—1. Actions for the recovery of real property, or for the recovery of the possession thereof; and no action shall be maintained for such recovery unless it appear that the plaintiff, his ancestor, predecessor, or grantor, war seized or possessed of the premises in question within ten years before the commencement of the action."

It is contended by the appellants' counsel that, under this section, good faith, or a belief that he is right, is not required of the usurper of the possession of the land; that it is not a question of conscience, but purely one of visible, outward conduct. He classes this possession as: First,

"color or claim of·title cases"; and, second, "usurpation cases"; and admits that the case at bar is a "usurpation case," and not a "color or claim of title case"; and insists that the testimony in this case shows that the appellants have had undisputed possession of this land for the last ten years immediately preceding the commencement of the action. It is even contended by the appellants that the trespasser, pure and simple, can obtain this legal right; that he can procure possession by violence; and that at the end of the ten years the land will become the land of the trespasser. Without especially reviewing all the cases cited by either the appellants or respondent, the overwhelming weight of authority seems to be that the basis of an adverse possession is a claim of title or right. An entry can only be made by the seizin of the claimant, or by an ouster of the owner of the freehold. There must be a disseizin before another can become legally possessed of the lands, and this, of course, can only be done by some act which works a disseizin of the original owner, for the seizin cannot abide in two claimants at the same time. And as the statute of limitations will not commence to run until this seizin, it becomes necessary to determine what acts will constitute a disseizin or dispossession of the original claimants. First, there must be an intention; that is, an entry for the purpose of dispossessing the owner. That intention, of course, must be determined by the acts of the usurper; and before the right of the owner could be extinguished, and his divestment established, and an investiture created for the usurper, there must, of necessity, be an adverse possession on the part of the new claimant. And while it is true that the statute provides that no action shall be maintained unless the plaintiff has been possessed within ten years, yet the question of whether or not the original owner is so disseized must of necessity, in a case

like this, depend upon whether or not there has been an adverse possession of the defendants during the statutory period. For the disseizin can only occur where there is an adverse or hostile entry. This court has said in *Bellingham Bay Land Co. v. Dibble,* 4 Wash. 764 (31 Pac. 30), that the entry must be under claim or color of title, or it would not ripen into title. And it was also said in *Balch v. Smith,* 4 Wash. 497 (30 Pac. 648):

"In our opinion our statute of limitations is like that of most other states, one of adverse possession, and under it the rightful owner of real estate is seized of the same, whether or not he is in actual possession thereof, unless the same is in the actual adverse possession of some other person. This being so, it follows that when ownership and seizin is once shown it will be presumed to have continued until such presumption is overcome by allegation and proof of adverse possession in some one else."

*Moore v. Brownfield,* 7 Wash. 23 (34 Pac. 199), is cited in support of appellants' contention that no color of title or claim of right is necessary in the usurper. But this case does not bear out such contention. The point upon which the case was reversed was error of the court in its instructions in relation to the merger of the ten-year statute of limitations into the old statute of twenty-year limitations. It was said in the opinion, however, that the objection that the possession without color of title cannot be adverse, so as to entitle the possessor to the benefit of the statute of limitations, is not well taken. But it was asserted that such possession must be under a claim of right. The other cases from this state are not applicable to the state of facts presented here. A literal construction cannot be given to the statute of limitations in this respect, or it would prevent the recovery of land where permissive possession had been given. The court found that the defendants knew that the property was in litigation between.

Cowley and the railroad company, and that Cowley was living on a portion of it; that they moved upon these lots because they were vacant, and had no thought of claiming any right, title, or interest in the lands until about the time this action was instituted, or a year or two earlier, when they conceived the idea that if they were allowed to remain on the land for ten years they would acquire title according to the statute of limitations; that the improvements placed by them upon the land were of insignificant value, and were only necessary to the mere occupancy of the lots as a place of residence; that none of the defendants, or any of their predecessors in possession, have ever paid any taxes on the property occupied by them; and found, as a conclusion of law, that none of them had any right, title, or interest in the property, and had not held adverse possession of the land, and that the statute of limitations did not commence to run against the plaintiff until the issuance of the patent. We have examined the testimony *in extenso,* and are of the opinion that the findings made by the trial court were warranted by the same. The testimony of defendant Nienau, who has probably as strong a case as any of the defendants, convinces us that any claim to the right, possession, or title to this land is utterly unfounded. While he says in some instances that he went there for the purpose of making a home and obtaining title to the land, his testimony is inconsistent with itself, and contradictory and absurd. He admits that he knew the land was in litigation between Mr. Cowley and the railroad company, and that the railroad company was claiming it by grant of congress, and had heard that Mr. Cowley was claiming the land. He says that he knew that it was not his own land, and that he did not have any right to it, but that he did not know that it was anybody's else; that when he went there he was looking for a piece

of land to squat on, if he could find it; and he also testified that he knew he could not get government land by squatting on it; that he made no attempt to file upon the land, or obtain it from the government in any way, but his understanding was that, when two people got into a dispute about a piece of land, he could get it by squatting upon it, and that was all the claim or right that he had to it. The whole testimony convinces us that the claimant, when he went there, simply squatted upon the land for present convenience; that he had no color of title or claim of right to it in any sense whatever; that he did not even intend or think of obtaining title to it, by the statute of limitations or in any other way, at the time he settled upon it, or for many years thereafter; that the occupation was purely permissive, by reason of the circumstances which we have above portrayed; and that it was the intention upon the part of these claimants to reap the benefit to which they are not entitled by now claiming an adverse possession for ten years. It is not such strolling, straggling occupancy as is shown by the testimony in this case that constitutes a notice of adverse possession. It is the history of most cities of this country that where lands are lying idle, either from being held by non-residents, or from being tied up in lengthy litigation, that a certain class of people squat upon them and build for present use what are called shacks or shanties, and are frequently not disturbed for many years. And this was exactly the condition of affairs in Spokane in reference to these lands in dispute. It is not conducive to public morals to allow a stranger to take possession of property which is in dispute between two citizens, and claim that it is his because the owner has a controversy over it with some one else. Even if, under such circumstances, adverse possession could ripen into title by reason

of large improvements which would necessarily challenge the attention of the owner as being inconsistent with any other theory than that of ownership on the part of the builder, no such notice is given in this case, where the testimony shows, as do the findings of the court, that the improvements were insignificant in character and value, and were only necessary to the occupancy of these lots as a place of residence. And what was said of Nienau may be said of all other defendants. The conclusion we have arrived at on this proposition renders it unnecessary to discuss whether or not the statute of limitations began to run before the patent issued.

The judgment is affirmed.

REAVIS, C. J., and ANDERS, WHITE, HADLEY, MOUNT and FULLERTON, JJ., concur.