## JASPERSON et al. v. SCHARNIKOW.

(Circuit Court of Appeals, Ninth Circuit. February 4, 1907.)

No. 1,332.

ADVERSE POSSESSION—NATURE AND REQUISITES—TITLE OR CLAIM.

The taking possession and occupancy of vacant land by a mere squatter does not work a disseisin of the true owner, nor will such possession ripen into title; but, to constitute adverse possession, it must originate under claim or color of title having reference to some distinct source from which it is claimed to have been deraigned.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Adverse Possession, §§ 387–393.]

In Error to the Circuit Court of the United States for the Northern Division of the Western District of Washington.

Jas. B. Reavis, F. S. Thorp, and L. H. Wheeler, for plaintiffs in error.

H. D. Moore and Ellis & Fletcher, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. The defendants in error brought ejectment to recover the possession of a quarter section of land situate near the town of Ballard, in the state of Washington. Their claim of title was by seisin under a patent from the United States issued in 1872 and the payment of all taxes assessed since that time. The plaintiffs in error claimed right and title to said premises through their predecessor in interest, Uriah M. Bryant, who, as they asserted, entered into the possession of said premises in the year 1888, under a claim of right to the ownership thereof and adverse to all others, and that such claim of right and possession was continuous, exclusive, actual, and adverse for more than 10 years preceding the commencement of the action. The trial court at the conclusion of the evidence submitted to the jury the question of the amount of damages recoverable by the defendants in error, but instructed the jury to return a verdict in their favor for the recovery of the possession of the premises.

It is contended that this instruction was not justified by the evidence. There was testimony tending to prove that in the year 1888 Uriah M. Bryant, the predecessor in interest of the plaintiffs in error, entered into the possession of the premises, constructed thereon a log cabin and a log barn, made certain other improvements, cleared a small portion of the land, built roads for hauling shingle bolts and wood to market,

and during the time of his occupation, which extended from that date until his death in 1897, was actively engaged in cutting and hauling such timber products to market, using two teams for that purpose. There was testimony that he went into possession of the land for the reason that he found it vacant and unoccupied and intended to acquire it as a homestead. One O. H. Briggs testified that he went into possession of the premises with Bryant; that they had looked over the premises, found no landmarks, determined to squat upon it, and, if they proved up, to divide it; that thereafter they went to the court-house and found the land had been patented to Higgins, after which the witness abandoned the premises, leaving the same in the possession of Bryant. There was testimony of another witness that some years later he knew that Bryant claimed the place against some man named Higgins. There was no other testimony as to the nature of Bryant's claim, except that the place was known as the "Bryant Place," and that Bryant, as owner, posted on the premises notices against tres-passers. Siepmann, one of the plaintiffs in error, testified that in April, 1898, some four months after Bryant's death, he bought the premises from the widow and Bryant's father, Jacob S. Bryant, for the sum of $350, of which $15 was paid to the widow and $175 to the father, and that he still owes $160 thereof, and that on May 17, 1899, a quitclaim deed was obtained to said premises from Jacob S. Bryant and his wife. The record shows that the property was appraised in the year 1899 at $48,000, and that the annual taxes thereon at the time when the plaintiffs in error made their purchase exceeded the amount of the purchase price which they were to pay for the property; that during the whole of the time of such alleged adverse possession the defendants in error resided in the state of Montana and paid all the taxes assessed against said property; and that Bryant and his successors in interest never at any time paid any taxes thereon.

These facts fully justified, we think, the trial court in saying at the close of the evidence that the entry of Bryant and his wife was without any pretense "of having a right as owner of the property at the inception of their entry, which is necessary to make out a title by adverse possession. This idea of acquiring title by larceny does not go in this country. A man must have a bona fide claim, or believe in his own mind that he has got a right as owner, when he goes upon land that does not belong to him, in order to acquire title by occupation and possession. The defendant's evidence fails to show any claim of right in Bryant when he went on the land. There is not a particle of testimony that squints in the direction that he supposed that he had any right, or that he went there for any other purpose than to acquire right, if he could do so by holding long enough without molestation."

In Balch v. Smith, 4 Wash. 497, 30 Pac. 648, the Supreme Court held that the basis of an adverse possession is claim of title or right. The court said:

"It must be considered at the outset that the hostile possession must be con-tinuous and notorious, and that it cannot be made out by inference or pre-sumption. As the presumption is in favor of the true owner, it must be exclu-sive. It must be continuous; for, as soon as the adverse possession ceases,

the constructive possession incident to the better title is renewed. It must, of course, be under claim or color of title, or it would not ripen into title."

In Blake v. Shriver, 27 Wash. 593, 68 Pac. 330, the court reaffirmed that doctrine and said:

"There must be a disseisin before another can become legally possessed of the lands, and this, of course, can only be done by some act which works a disseisin of the original owner, for the seisin cannot abide in two claimants at the same time. And as the statute of limitations will not commence to run until this seisin, it becomes necessary to determine what acts will constitute a disseisin or dispossession of the original claimant. First, there must be an intention; that is, an entry for the purpose of dispossessing the owner. That intention, of course, must be determined by the acts of the usurper; and before the right of the owner could be extinguished, and his divestment established, and an investiture created for the usurper, there must, of necessity, be an adverse possession on the part of the new claimant. * * * The disseisin can only occur where there is an adverse or hostile entry."

In Yesler Estate v. Holmes, 39 Wash. 34, 80 Pac. 851, it was held that adverse possession, to work a disseisin of the true owner, must be under a claim of right or color of title; that an entry upon the lands of another under a mistaken, though honest, belief that the same were public lands subject to entry, would not work a disseisin of the true owner. It is the doctrine of these decisions, and it is the generally accepted doctrine, that a mere squatter can never obtain title by possession; that, to constitute adverse possession under a claim of title, the claim must be a distinct claim of title, and not a general assertion of ownership, connected with no source from which it is claimed to be deraigned.

In Ewing v. Burnett, 11 Pet. (U. S.) 51, 9 L. Ed. 624, the court said:

"An entry by one man on the land of another is an ouster of the legal possession arising from the title, or not, according to the intention with which it is done. If made under claim and color of right, it is an ouster; otherwise, it is a mere trespass. In legal language, the intention guides the entry and fixes its character."

The entry in the present case was not made under any claim or color of title, and it could not work a disseisin of the owner. The grantor of the plaintiffs in error was a trespasser, a squatter, on the land. He knew that the land had been patented to another. It was not known to the defendants in error, or any of their agents, that he had been in such possession until about a year after his death. The fair inference from the evidence is that he was in the possession with the intention of remaining there until ejected by the true owner, and in the meantime to make a predatory living by cutting and selling timber from the premises. We think the court below was clearly right in instructing the jury as it did.

The judgment is affirmed.