[No. 22496. Department Two. July 17, 1930.]

FRANCIS L. FOOTE *et al., Appellants,* v. GEORGE R. KEARNEY *et al., Respondents.*[1]

*Howard Waterman* and *Carroll Hendron,* for appellants.

*Long & Hammer,* for respondents.

HOLCOMB, J.—In this action of ejectment, brought by other parties as plaintiffs, in which appellants were

[1]Reported in 290 Pac. 226.

substituted, it is sought to quiet title to an eight-foot strip of a certain lot claimed by respondents by adverse possession for over ten years. The case was tried to the court without a jury, and findings, conclusions and judgment awarded respondents, from which this appeal is taken.

The property involved is an eight-foot strip of a platted lot in block 44, supplemental plat of A. Pontius addition to Seattle, designated as 315 Boylston avenue north. Appellants and their predecessors in interest owned lots 1 and 2; respondents and their predecessors in interest owned the north half of lot 3 adjoining lot 2 on the south. It was stipulated in open court that: (1) Both parties have an unbroken chain of title to their respective properties and have paid all taxes for over ten years; (2) appellants' lot 2 was unoccupied and unimproved until the building of an apartment house was commenced in November, 1924; (3) for twenty years prior to that time, a fence existed on lot 2 about eight feet north of the true north line of lot 3; (4) during all that time, the tenants of the house which was located on the north half of lot 3 used the eight-foot strip as a part of their property. The question for determination is whether or not respondents and their predecessors in interest were, for more than ten years immediately preceding the commencement of this action, in actual, adverse, hostile, open, notorious, exclusive and continuous possession of the eight-foot strip above mentioned.

The trial court, upon conflicting evidence, found that they had been. It further found that, during all of that time, the strip of land in question was fenced, cultivated and used by respondents and their predecessors in interest, and was actually, adversely, openly, notoriously, exclusively and continuously possessed, occupied and used by them and their predecessors in

interest in good faith and under claim of right as a part of the north half of lot 3, etc. Upon those findings the court concluded that respondents were entitled to a decree quieting the title to the eight-foot strip, which was accordingly entered.

The first contention of appellants is that there was no disseisin of appellants or their predecessors in interest prior to 1918, in July of which year lot 3 was deeded to respondent Kearney. It is asserted that there is no evidence in the record that any owner of lot 3 prior to Kearney made any claim, in good faith or otherwise, to the disputed eight-foot strip.

There is abundant evidence in the record that all the tenants of the owners prior to Kearney, back to 1904, claimed the disputed strip as being a part of lot 3. Four witnesses testified that they resided on the premises; one of them from July, 1905, to December, 1905, another from May, 1907, to September, 1909, another from January, 1914, to August 1, 1915, and another from August 1, 1915, to July 1, 1918, when respondents took possession. All of them testified that, during the occupancy of the premises, there was an old picket fence, about twelve feet from the wall of the house, covered with ivy, and that originally there had been a sort of lattice work summer house built in the northwestern corner of the lot on the exact site of the later location of a garage constructed by respondents. The testimony also showed that the twelve feet of ground between the house and the fence extending back to the rear of the lot, had all been cultivated for garden, lawn and flowers by the occupants of the premises back to at least July, 1905; and some witnesses stated back to 1903 or 1904; that the fence which was originally on the line, twelve feet from the house, when it became dilapidated, was replaced with a new fence on the same line as the old one; that the

fence had always remained in the same position at all times since the first fence was placed thereon.

- The evidence for respondents also is to the effect that respondents built a garage upon the site of the old summer house on the eight-foot strip in question in November, 1918, at a cost of $250, and a concrete driveway from the street to the garage at a cost of $130.

The theory of appellants is that, since appellants and their predecessors in interest were the record owners of their lot as platted and dedicated, up to the true line, they were seized thereof, whether in possession or not, and that disseisin can only occur where there is an adverse and hostile entry, which must be made under a claim of right for the purpose of dispossessing the owner (*Yesler Estate v. Holmes*, 39 Wash. 34, 80 Pac. 851; *McNaught-Collins Imp. Co. v. May*, 52 Wash. 632, 101 Pac. 237) and that the entry must be hostile or it will be presumed permissive (*Schmitz v. Klee*, 103 Wash. 9, 173 Pac. 1026); that the facts as shown in this case do not prove any disseisin of them or their predecessors prior to 1918.

"It is not necessary, however, that the party in possession should have expressly declared his intention to hold the property as his own, nor need his claim thereto be a rightful one. That his acts and conduct clearly indicate a claim of ownership is enough." 1 R. C. L. 705, § 18.

"The intention of the party claiming adverse possession, and also the notice of such claim to the real owner, must be inferred from the acts and declarations of the parties." *Bowers v. Ledgerwood*, 25 Wash. 14, 64 Pac. 936.

"These acts, which continued without interruption for a period of more than ten years, and until the commencement of this action, certainly evinced an assertion of permanent proprietorship on the part of respondents and all of their grantors, back to and in-

cluding Taylor, and constituted notice to the real owners." *McCormick v. Sorenson,* 58 Wash. 107, 107 Pac. 1055, 137 Am. St. 1047.

See, also, *Erickson v. Murlin,* 39 Wash. 43, 80 Pac. 853; *Alexander v. Bennett,* 91 Wash. 688, 158 Pac. 534; and *Metropolitan Building Co. v. Fitzgerald,* 122 Wash. 514, 210 Pac. 770.

In the *Erickson* case, *supra,* it was held that a boundary line between two city lots may be determined by adverse possession for the statutory period, where the party built and maintained a fence twenty-one inches over the true line openly, continuously and under a claim of right. In that case, it was observed that:

". . . unless it is to be held that boundary lines cannot be determined by possession and claim of right upon the one side, and acquiescence upon the other, we know of no reason why the respondents may not claim title by adverse possession in this instance. The general rule, as we understand it, is that boundary lines may be determined by adverse possession, and we so held in *Bowers v. Ledgerwood,* 25 Wash. 14, 64 Pac. 936."

Appellants further contend, in this connection, that adverse possession cannot be initiated and held by a tenant, but must be instituted by the landlord, citing cases and texts to the effect that mere possession will be presumed to be in subordination to the title of the true owner.

That is not an unqualified rule.

"It is not necessary that the person claiming title by adverse possession should have been in personal occupation of the land. Possession by an agent or by a tenant under him inures to his benefit and satisfies the requirements of the statute of limitations. What a man may do himself, in the matter of taking and holding possession of real estate, he may do by another." 2 C. J. 73, § 48.

In this case, the possession of the premises by the tenants was the possession of their landlords, Webster and Thorne, back to 1904. During all that time, all tenants used, occupied and cultivated the strip in good faith, believing it belonged to the land of their landlords. The land apparently extended to the fence. Their occupancy was not trespass, nor merely permissive by the record owner. It was actual, visible and adverse to the true owner, who never disturbed it until November, 1924. Such occupancy by tenants certainly inured to the benefit of the landlord.

Appellants also contend that respondents did not claim adversely in good faith, because they knew the fence did not mark the true line.

That proposition involves entirely a question of fact, which the trial court resolved against appellants upon competent, though conflicting, evidence. Upon that question, it is governed by the *Alexander* case, *supra*.

Appellants next contend that the continuity of possession was broken when Calvin Phillips & Co. bought lot 3 and made no claim beyond the line shown by a survey, caused by them to be made, that conveyed and intended to convey to respondents the north half of lot 3 only as surveyed to the true line thereof.

The record shows that, prior to April, 1918, one Isis Thorne and her husband owned the premises, they having purchased from one Webster in December, 1909. In April, 1918, Calvin Phillips & Co., as agents for the Thornes, advertised the premises for sale. In response thereto, respondents called at the office of Calvin Phillips & Co., who sent one of their salesmen out to the premises to examine them. Respondents, being satisfied with the premises and desiring to purchase them, gave an earnest money receipt contract to Calvin Phillips & Co. The Thornes resided in Mon-

tana, and had an incumbrance upon the real estate. For convenience in passing the title to the property and disposing of the mortgage, doubtless, Calvin Phillips & Co. had a deed executed by the Thornes in Montana to them, dated May 20, 1918. On May 24, 1918, they conveyed to Aetna Investment Company. On May 24, 1918, Aetna Investment Company conveyed to Mary E. Phillips, trustee and holder of title for respondents. On December 9, 1919, Mary E. Phillips conveyed to respondent Kearney.

At no time after conveyance by the Thornes to Calvin Phillips & Co. did they or their grantee, Aetna Investment Company, or its grantee, Mary E. Phillips, take actual possession of the property or of the eight-foot strip. The tenancy of Bentley, the tenant in possession under the Thornes, was never disturbed until respondents took possession on July 1, 1918. Bentley paid the rent to respondents during the months of May and June. There was, therefore, no interruption in the possession from the Thornes to respondents, and the continuity of possession remained unbroken.

We conclude, under the facts in this case, it is governed by the cases above cited, and not by those relied upon by appellants.

Affirmed.

MITCHELL, C. J., MAIN, FULLERTON, and FRENCH, JJ., concur.