[No. 29344. Department One. December 8, 1944.]

BOWDEN-GAZZAM COMPANY, *Appellant*, v. JACK C. HOGAN, *Respondent*.[1]

*Preston, Thorgrimson, Turner, Horowitz & Stephan* and *Theodore S. Turner*, for appellant.

*Charles T. Wright*, for respondent.

[1]Reported in 154 P. (2d) 285.

JEFFERS, J.—About December 23, 1941, Bowden-Gazzam Company, a corporation, commenced two actions in the superior court for Mason county, for the purpose of quieting its title to all tidelands of the second class formerly owned by the state of Washington, situate in front of, adjacent to, or abutting upon that portion of the government meander line in front of government lot 4, section 32, township 22 north, range 3 west W. M., extending to the line of extreme low tide, and lying east of the east line of Seattle street extended north, as such street is designated on the plat of Hood's Canal Land & Improvement Company's plan of Union City, according to the recorded plat thereof in the office of the auditor for Mason county, volume 1 of plats, p. 9.

Jack Hogan was made defendant in cause No. 4075 of the records of the superior court for Mason county, and Earl Kent and wife, Helen McReavy Anderson, the state of Washington, and many others were made defendants in cause No. 4088 of the records of the superior court for Mason county.

It is alleged in the complaint in the Hogan case that plaintiff is the owner with the right to possession of the above-described property, and that plaintiff and its grantors have owned such real estate at all times hereinafter mentioned.

It is further alleged that defendant Hogan is now and has been for a long time last past in possession of a portion of such tidelands; that defendant originally entered into such possession by permission of plaintiff, and without claim of right has erected certain obstructions thereon; that defendant, as plaintiff is now informed and believes, lays claim to the portion of the tidelands occupied by him, adversely to plaintiff's title, which claims are without right or color; that these encroachments and claims of defendant cloud plaintiff's title to such lands, and hinder the quiet and peaceable possession and enjoyment of same. Plaintiff then prays that title to such tidelands be quieted in it as against defendant and all persons claiming under him.

Defendant Hogan answered this complaint, denying all the allegations thereof except in so far as such denial is inconsistent with the affirmative defense hereinafter stated. Defendant then alleged affirmatively that he had used, occupied, and had possession of all the premises now occupied, possessed, and used by him for a time in excess of thirty years; that such occupation and possession has at all times been actual, open, notorious, hostile, continuous, exclusive, and under claim of right; that during this period defendant has held and possessed the property, together with the right of ingress and egress to the navigable water of Hood canal and to the public highway; that defendant is the owner of all such property now used, occupied, and possessed by him.

In view of the fact that in this opinion we are concerned only with the Hogan case, we shall refer to the Kent case only when it may have some connection with the Hogan case.

The parties to the two actions having so stipulated, the court, on June 12, 1943, entered an order consolidating them for the purpose of trial. We have therefore only one statement of facts, which is applicable to both cases. We may say here that, because of the different factual bases upon which the claims of the respective defendants are based and because of the order in which the testimony was introduced, it has been most difficult to sift out the testimony applicable to each case.

While these two cases were consolidated for the purpose of trial, separate judgments were made and entered in each case, and separate appeals have been taken by the plaintiff from the judgments entered.

On December 22, 1943, the court made and entered its judgment in the Hogan case. We quote from the decree:

"That the defendant has been in open, notorious, hostile and adverse, and continuous possession of the property hereinafter described for more than ten years prior to the commencement of this action, and has maintained thereon certain buildings and structures, and by virtue of such possession, defendant has acquired title to said property by adverse possession."

Then follows a metes and bounds description of the property. This description begins at a point 84 feet north and 8.20 feet west of the southeast corner of lot 39, block 47, Hood's Canal Land & Improvement Company's plat of Union City. The description concludes as follows:

". . . except that portion of the right of way of Primary State Highway No. 14 (Navy Yard Highway), the said described property being a portion of the tide lands of the second class lying in front of Government Lot 4, section 32, township 22 north, range 3 west, W. M., Mason county, Washington."

By this decree defendant's title was quieted not only to the land upon which his improvements are located, but also to an area formed by extending a line southeasterly from the northeast corner of what is shown on the exhibits as a barge, to meet a line extended north from the northeast corner of defendant's garage.

Error is assigned in refusing to quiet title in appellant; in adjudging that respondent had acquired title to the property by adverse possession; and in awarding to respondent the unenclosed area not occupied by the structures.

Appellant's general contentions are that it has proved a valid title to the property; that respondent entered upon the tideland as a squatter, and neither his original entry nor subsequent occupancy manifested an intent to claim title adversely to the true owner; that in any event the evidence was insufficient to show adverse possession of the enclosed area not occupied by respondent's structures.

Respondent does not deny that since about 1901 the record title to the second-class tidelands in front of government lot 4 and lying east of the east line of Seattle street has stood in the name of appellant and its grantors, but he contends that, by adverse possession under the ten-year statute, he has acquired title to the tidelands described in the decree.

In so far as appellant's title is concerned, it is sufficient for the purpose of this case to say that appellant deraigns its title to the tidelands here in question through Herbert E.

McReavy, who on March 8, 1901, acquired title from the state of Washington to all tidelands of the second class situate in front of, adjacent to, or abutting upon that portion of the government meander line in front of lot 4, section 32, township 22 north, range 3 west W. M., lying east of the east line of Seattle street.

Hood's Canal Land & Improvement Company's plat of Union City does not become material in this case, except in connecting up the starting point of the land awarded to respondent by the decree, and in locating the land awarded to respondent, as respondent is not claiming to have color of title based upon any conveyance according to the above plat.

We do not deem it necessary in this case to discuss the question of where the line of ordinary high tide in front of government lot 4 is, other than to say that the trial court apparently accepted the line established by Mr. Wey in 1941, as shown on plaintiff's exhibits M and N introduced herein.

We shall try to give a picture of respondent's improvements, in order that we may have them in mind as the testimony is discussed. The structure farthest to the west is described on the exhibits as a barge; it will also be referred to in the testimony as the "pile driver." This structure extends northerly and southerly. Across the south, or shore end of the barge, is a platform which extends some sixty or seventy feet to the east, where it connects with a garage. This garage is connected with the Navy Yard highway by planks.

Respondent came to Union City about 1907, and for many years operated a pile driver in that vicinity. In 1913 he entered upon appellant's lands, with the intention of making his home there. During the years between 1913 and 1923, he moved his pile driver (which we assume was the same structure referred to as the barge) to about the present location of his improvements. He piped water to the pile driver, had living quarters thereon, and used it as his home. Until 1923, respondent would take the pile driver out as his business demanded, returning it to the

same location. He obtained permission from no one to occupy the land herein involved. Respondent testified that he thought if one occupied land for ten consecutive years without interference from any person claiming to own the land, such occupant became the owner.

In 1923 this pile driver was resting on some timbers on the beach. A Mr. Addleman desired to use the driver, so he made an arrangement with respondent whereby Addleman was to first repair the pile driver so it would float, and, after he was through with it, he would construct a gridiron and draw the pile driver up on it. When Addleman was through with the driver, he built a gridiron by driving down piling and placing twelve by twelve timbers across the piling. He secured the timbers to the piling by drift bolts. After this was done, the pile driver was pulled up on the gridiron at an extremely high tide, where it still rests upon the same foundation. After the driver had been pulled up on the gridiron, the machinery was taken out and a platform was built on the shore side of the structure. This was all done in 1923. About a year later, a garage was built, the platform from the barge was extended to the garage, and an approach from the garage to the Navy Yard highway was built.

About this time respondent purchased a small pile driver, which was used by him in his business until he retired. When not in use, this small pile driver was kept moored somewhere adjacent to the barge or platform, but just where does not appear. A small boat was used to tow the driver to deep water, and this boat was moored somewhere about the premises. During all this time respondent used the water between his buildings and the deep water of Hood canal for the purpose of towing barges, scows, etc., but he admitted others used the same water.

Mr. Hogan has at all times lived and made his home on this barge, and has claimed and referred to it as his home. The structures were in plain sight of the highway; in fact, it would seem that at least a part of the garage is on the highway right of way. Respondent had given permission to various people to use his garage.

Mr. Gazzam, who is the president and owner of all except qualifying shares of stock in appellant corporation, admitted that he had often seen respondent's buildings, and that he never made any claim to respondent that appellant was the owner of the land upon which respondent's buildings were located, until after appellant had acquired the Graham interests in these tidelands and after appellant had caused a survey to be made by Mr. Wey in 1941, in which the ordinary high tide line in front of government lot 4 was established. After this survey, which was made in 1941, Mr. Gazzam called on respondent and stated that appellant was the owner of the tidelands occupied by respondent, and that he, Gazzam, was respondent's landlord. Mr. Hogan neither denied nor admitted Mr. Gazzam's claim.

As we stated, according to the line of ordinary high tide, as established by Mr. Wey and as shown on plaintiff's exhibits M and N, all of respondent's structures, with the exception of a small portion of the east end of the platform leading from the barge to the garage and a small corner of the south or shore side of the garage, are below the line of ordinary high tide.

Appellant has at all times paid the taxes upon the tidelands here involved.

While it does not appear how much the improvements placed on this land by respondent cost, and while it may be admitted that the improvements are not what might be termed modern structures, yet they certainly are of a substantial character and such as would certainly challenge the attention of anyone who claimed they were encroachments.

Respondent's claim of ownership is based on Rem. Rev. Stat., § 156 [P. C. § 8161], which provides:

"The period prescribed in the preceding section for the commencement of actions shall be as follows:

"Within ten years,—

"1. Actions for the recovery of real property, or for the recovery of the possession thereof; and no action shall be maintained for such recovery unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seised

or possessed of the premises in question within ten years before the commencement of the action."

Before referring to some of the cases dealing with adverse possession, let us see what some of the text writers have to say on this subject. Buswell on Limitations and Adverse Possession, p. 324 *et seq.,* defines adverse possession as follows:

"Adverse possession may best be defined as an actual, visible, and exclusive appropriation of land, commenced and continued under a claim of right—either openly avowed or constructive, as arising from the acts and circumstances attending the appropriation—to hold the land against him who was seised. The principle upon which the statute of limitations is applied is not merely that the party pleading it has set up an adverse claim as having existed during the period specified in the statute, but that the adverse claim is accompanied by such an invasion of the rights of the opposing party as to give the latter a cause of action, which, not having been prosecuted within the time limited by law, is presumed to be extinguished or surrendered."

The same author, on p. 336, states:

"The intent to hold adversely in any case may be inferred from positive acts of ownership on the part of the occupant. Thus building upon the land of another is constructive notice of an adverse claim. So where one had driven piles into the soil covered by a mill-pond, and upon them had erected and maintained buildings, the water flowing between the piles, this was held to be an adverse occupation because it was open and visible, and almost the only occupation which, under the circumstances of the case, could have existed to constitute a disseisin or complete exclusion of the possession of the lawful owner."

What is meant by the "claim of right," which, together with occupation, forms the basis for a claim of title by adverse possession, under statutes such as our limitation statute? The following quotation explains the meaning of this term, and it seems to us the explanation is both practical and the only logical meaning which could be given the term. We quote from 4 Tiffany on Real Property (3d ed.) 441, § 1147:

"It has been asserted, by many of the courts in this coun-

try, that in order that the statute of limitations may run in favor of one in possession of land, the possession must be under claim of right or title. [Citing, among other cases, *Skansi v. Novak,* 84 Wash. 39, 146 Pac. 160.] There would seem to be reason to doubt, however, whether, in asserting this requirement, the courts ordinarily have in mind anything more than a restatement of the requirement of hostility of possession. They do not ordinarily undertake to explain why a claim of title on the part of the possessor is necessary, and it appears that the rightful owner is quite sufficiently protected by the requirement of adverseness or hostility of possession."

The Texas court, in the case of *Houston Oil Co. v. Jones,* 109 Tex. 89, 198 S. W. 290, discusses the term "claim of right." Texas has a statute which defines adverse possession as follows:

" 'Adverse possession' is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another."

The opinion in the cited case states:

"The 'claim of right' to which the statute refers simply means that the entry of the limitation claimant must be with the intent to claim the land as his own, to hold it for himself; and such must continue to be the nature of his possession."

From a reading of our own cases where adverse possession is based on the ten-year statute of limitations, we are of the opinion that this court must have given to the term "claim of right" the same meaning accorded to it by Tiffany and the Texas court. In the early case of *Moore v. Brownfield,* 7 Wash. 23, 34 Pac. 199, we stated:

"The objection that possession without color of title cannot be adverse so as to entitle the possessor to the benefit of the statute of limitations is not well taken. Actual, uninterrupted and notorious possession under a claim of right is sufficient, without color of title, and such possession need not be adverse to all the world."

In *Skansi v. Novak,* 84 Wash. 39, 45, 146 Pac. 160, we stated:

"It is now the settled law of this state that an entry on and possession of land, under the mistaken belief that it is public land, will not have the effect of disseizing the true owner. Such possession is subservient to the public right; hence it is not hostile or adverse to the true owner. *McNaught-Collins Imp. Co. v. May*, 52 Wash. 632, 101 Pac. 237; . . . *State v. Sturtevant*, 76 Wash. 158, 135 Pac. 1035, 138 Pac. 650. The cases of *Johnson v. Conner*, 48 Wash. 431, 93 Pac. 914, and *Moore v. Brownfield*, 7 Wash. 23, 34 Pac. 199, in so far as they hold the contrary, were distinctly overruled by the *McNaught-Collins Improvement Co.* case and the *Sturtevant* case."

Nevertheless the following portion of the rule announced in the *Brownfield* case has been consistently followed:

"The objection that possession without color of title cannot be adverse so as to entitle the possessor to the benefit of the statute of limitations is not well taken. Actual, uninterrupted and notorious possession under a claim of right is sufficient without color of title."

In *Hesser v. Siepmann*, 35 Wash. 14, 76 Pac. 295, we recognized the rule announced in the *Brownfield* case, *supra*, and in the cited case we specifically referred to and distinguished the case of *Blake v. Shriver*, 27 Wash. 593, 68 Pac. 330, cited by appellant herein to sustain its contention that respondent was only a squatter. Referring to the *Blake* case, the court said:

"It is true that this court held that squatters upon unoccupied land in the city of Spokane did not obtain title to said land by reason of a residence thereon for more than ten years; but it was not the intention in that case to overrule any of the preceding cases decided by this court. There (*Blake v. Shriver*), there was no pretense of any claim of right or color of title, by record or otherwise. The land was known to the claimants to be land the title of which was in litigation. The court, in speaking of one of the claimants, said:

" 'The whole testimony convinces us that the claimant, when he went there, simply squatted upon the land for present convenience; that he had neither color of title nor claim of right to it in any sense whatever; that he did not even intend or think of obtaining title to it, by the statute of limitations or in any other way, at the time he settled upon it, or for many years thereafter; that the occupation

was purely permissive, by reason of the circumstances which we have above portrayed; and that it was the intention upon the part of these claimants to reap the benefit to which they are not entitled by now claiming an adverse possession for ten years.' "

The facts in the *Blake* case which called forth the statement of the court last above quoted are so different from the facts in the instant case as to clearly show that the *Blake* case is not authority for appellant's contention that under the facts in this case respondent was only a squatter.

It was apparently upon the theory that respondent was a squatter that appellant alleged in its complaint that respondent's original entry upon the land was with appellant's permission, for there is no testimony which indicates that respondent asked the permission of anyone when he entered upon the land.

In none of these cases does the court say what is meant by the term "claim of right," but we assume it has been understood to mean an intention on the part of the claimant to claim in hostility to the title of the real owner. See *Port Townsend v. Lewis,* 34 Wash. 413, 75 Pac. 982.

The rule announced in the *Brownfield* case, *supra,* has been consistently followed in this state down to and including the case of *Roesch v. Gerst,* 18 Wn. (2d) 294, 138 P. (2d) 846, in which we stated that the word "hostile," as used therein, does not necessarily import enmity or ill will, but it does import that the claimant is in possession as owner, in contradiction to holding in recognition of, or subordination to, the true owner.

We desire to set out one further quotation from 4 Tiffany on Real Property (3d ed.) 424, § 1142:

"In order that the statutes of limitations may bar one of his right to recover land it is necessary, not only that the land be in possession of another, but that such possession be 'adverse' or 'hostile' to the true owner. It is somewhat surprising, in view of the frequency with which the courts have recognized this requirement, that they have so seldom ventured to explain what they mean by an adverse or hostile possession as distinguished from one which is not adverse or hostile. The 'adverseness' of the possession, for the pur-

poses of this requirement, does not consist alone of mental intentions, but it must also be based on the existence of physical facts which openly evince a purpose to hold dominion over the land in hostility to the title of the real owner, and which will give notice of this hostile intent. A possession, it appears, is adverse to the true owner when it is unaccompanied by any recognition, express or inferable from the circumstances, of the right in the latter. It does not involve the necessity of an express denial of the right of the title of the true owner, and, it is evident, in the majority of cases there is no such denial."

■ We have, in the instant case, a claimed use and occupancy of tidelands, and the question naturally arises, does the character of the land have any bearing on the use and occupation necessary to support a title based on adverse possession?

In *Grays Harbor Commercial Co. v. McCulloch,* 113 Wash. 203, 193 Pac. 709, the land involved consisted of a strip of land lying between the inner harbor line and high water mark on the Chehalis river. It appears that, since respondent (defendant) had acquired the property, during each fishing season he had used so much of the property as was necessary for his nets and fishing appliances, and he had on several occasions asserted his ownership; that he had driven piling and had destroyed the piling driven by others. The appellant (plaintiff) contended that the facts were not sufficient to support respondent's title by adverse possession, arguing that respondent was only making such use of the property as was open to anyone of the general public who might have a fishing license; that the stream being navigable, anyone having a license from the state had a right to fish therein; and that such possession as the respondent had was not actual, open, notorious, uninterrupted, hostile, and exclusive. Answering this contention, the court stated: "It must be conceded, however, that the respondent did everything that ordinarily a person could do with property of this nature purchased for the purpose for which it was purchased."

It may be stated here that, while the respondent had purchased the land in question from the state as "tract 20,"

the opinion states that, at the time tract 20 was platted and sold by the state, it did not belong to the state and was illegally platted. The court held, however, that the deed from the state gave respondent color of title.

We appreciate, of course, that in the instant case respondent does not claim under color of title, but we can see no reason why the rule applicable to the question here being considered should be any different whether the occupancy be under claim of right or color of title.

In the cited case, we also quoted from the case of *Dem, ex Dem Saxton v. Hunt,* 20 N. J. L. 487: " 'The question will always be, whether the use or occupancy is consistent with the character of the land.' "

We desire to quote from the early case of *Wheeler v. Stone,* 1 Cush. (55 Mass.) 313, decided in 1848, as it deals quite fully with the question now being considered. The cited case, among other things, was concerned with title by adverse possession to certain tidelands in Boston harbor. Discussing the question generally, the court stated:

"A person may be disseized of flats, as well as of any other lands, and that by an occupation according to the nature of the property. The continual passing over them in vessels and small craft, and anchoring on them, constitutes neither a disseizin nor a trespass; such use in third persons being consistent with the nature of the grant. But if a stranger enters upon flats and fills them up, and continues in possession of the lands thus made, he will, by lapse of time, acquire a perfect title to the soil, and so by building a wharf and using the flats adjoining by laying vessels at it, and doing this exclusively, such a possession will constitute a disseizin of the true owner, and by lapse of time will, if not disturbed, ripen into a perfect title."

█ Under the facts of this case and the law applicable thereto, we are satisfied that respondent, under the ten-year statute, established title by adverse possession to all the tidelands described in the decree entered herein, except that area formed by extending a line southeasterly from the northeast corner of respondent's barge until it meets a line extended northerly from the northeast corner of respondent's garage. As to the area last referred to, we can

find no testimony which in our opinion would support a title thereto in respondent by adverse possession. It has never been enclosed; there are not now and never have been any improvements placed on it; and there is nothing in this record that we can find which, considering the character of the land, would indicate an intention on the part of respondent to claim title to the property. It is true the testimony shows that the small pile driver was moored somewhere about the premises, as was a small boat, and that probably some of this area was used by respondent in getting from his dock to deep water, but in our opinion this testimony is insufficient to meet the test of use and occupation required to establish title by adverse possession under the statute referred to.

The judgment of the trial court must therefore be and is modified to the extent of excluding therefrom the land in the area last above described, and, as modified, the judgment of the trial court is affirmed.

While the judgment of the trial court was modified to the extent above mentioned, we are of the opinion costs should be allowed respondent in this court.

SIMPSON, C. J., MILLARD, STEINERT, and GRADY, JJ., concur.