[No. 38799. Department Two. August 17, 1967.]

MARGIT FROLUND, *Respondent,* v. CHARLES F. FRANKLAND *et al., Appellants.**

*Reported in 431 P.2d 188.

Holman, Marion, Perkins, Coie & Stone, J. Paul Coie, and Dudley N. Perrine, for appellants.

James Munro, for respondent.

HAMILTON, J—This appeal concerns itself with a boundary dispute between adjoining owners of two partially cleared water-front properties located on Bainbridge Island, Kitsap County, Washington.

In 1903, Sten K. Larson and his wife owned all of Government Lot 2, Section 18, Township 25 North, Range 2 East W.M., on the west side of Bainbridge Island. On September 26th of that year, the Larsons conveyed "All of the north 11½ acres of Lot 2" to Lars Andersen, and "All of the south 10 acres of Lot 2" to Gunder Vick. Thereafter, on February 5, 1904, the Larsons made the following conveyance to Ole Mickelsen and his wife:

> The center 10 acres of Lot 2, Section 18, Township 25, North, Range 2 E.W.M., in Kitsap County, Washington, running from salt water back to Section line and bounded on the north by the land of Lars Andersen and on the south by Gunder Vick's land, all being in Lot 2 said Section and Township.

In 1926, following two intervening conveyances, plaintiff (respondent) and her husband acquired the "center 10 acres" by deed containing the following description:

> Beginning at a point on the Section line between Sections 17 and 18, Township 25 North, Range 2 E.W.M., in Kitsap County, Washington, 568.1 feet north of the quar-

ter corner on said Section line; *thence west along the north boundary of the ten acre tract heretofore conveyed to Gunder Vick 1060 feet,* more or less to the meander line; thence northwesterly along said meander line to the southwest corner of the 11½ acre tract heretofore conveyed to Lars Anderson [*sic*]; thence easterly along the south boundary of said 11½ acre tract 1254 feet, more or less, to the Section line; thence south along said section line 376½ feet to the place of beginning; thence the included area being 10 acres, more or less, *the intent being to convey all the land in Lot 2, Section 18 aforesaid between the 11½ acre tract on the north heretofore conveyed to Lars Anderson [sic] and the 10 acre tract on the south heretofore conveyed to Gunder Vick,* . . . . (Italics ours.)

At the time plaintiff received her deed there were two recorded deeds, representing appropriate conveyances, describing the Gunder Vick tract, in pertinent part, as follows:

Commencing at the southeast corner of Lot 2, section 18, township 25 north, range 2 east, W. M.; thence north on said section line 568 1/10 feet; *thence west parallel with the south boundary of said lot 2, 1060 feet to the meander line;* . . . . (Italics ours.)

Defendants (appellants) by deed dated in 1941 acquired, with certain exceptions not relevant here, the Gunder Vick tract. Their deed described the property simply as "The south 568.1 feet of Government Lot 2, Section 18, Township 25 North, Range 2 E.W.M."

At or about the time defendants acquired the Gunder Vick property, they obtained a survey of the boundaries. This survey, made by a University of Washington engineering professor, determined the south boundary of Government Lot 2 to be on a course of North 89° 05′ 30″ West from the southeast corner of the lot, and accordingly determined the north boundary of the Vick tract to be on a like and parallel course. The north boundary of the surveyed area was then staked. Relying upon this survey, defendants bulldozed and cleared the northwesterly portion of their beach and recreational area up to the staked line.

At some time prior to plaintiff's acquisition of the "center 10 acres" a fence had been constructed in the vicinity of the boundary between plaintiff's property and the Vick tract. Who constructed this fence, and whether it was initially installed as a "line fence" or as a random or stock-retaining fence is unknown. In any event, it would appear from the evidence that this fence commenced at a point 568.1 feet north of the southeast corner of Government Lot 2 and ran westerly 1060 feet, more or less, toward and to the beach on a course of South 89° 08' 17" West. At the time defendants purchased their property this fence was to a great extent obscured by brush, and when defendants bulldozed and cleared the northwesterly portion of their beach area during the 1940's approximately 150 feet of the fence was destroyed. However, the easterly remnants of the fence, and a dilapidated gate at a path between the respective properties, remained discoverable through the years.

The southerly deviation of the course of the old fence line along the southern boundary of plaintiff's property from the defendants' 1941 survey line creates a narrow wedge-shaped area approximately 1060 feet in length, with a base of 28 feet at the beach or meander line and an apex at the common corner on the easterly line of the respective properties. It is this triangular area which gives rise to this action. Plaintiff claims the disputed wedge by virtue of the existence and course of the old fence line and/or adverse possession. Defendants, on the other hand, base their claim to the area upon the consistency of their survey line with the various deed calls and/or adverse possession.

The trial court, in essence, found that, although it was not the true boundary, the old fence line was acquiesced in and recognized as the boundary line between the respective properties by plaintiff's and defendants' predecessors in interest between 1926 and 1941, and that defendants' actions thereafter did not sustain their claim of acquisition of any property lying north of the old fence line by adverse possession or otherwise. Accordingly, the trial court quieted title to the disputed wedge in plaintiff.

On appeal defendants principally assign error to the trial court's basic findings of fact and conclusions of law flowing therefrom.

We find no basis in fact or law to disturb the trial court's finding of acquiescence in the fence line as the recognized boundary between the properties from 1926 to 1941. However, we are constrained to disagree with the trial court's determination that defendants' actions subsequent to 1941 did not amount to acquisition of title to the strip of property in dispute by adverse possession.

The evidence is virtually undisputed, and the trial court so found, that defendants, during their initial negotiations for purchase of the so-called Gunder Vick tract, in good faith obtained the survey of the north boundary of that tract. This survey followed the calls of the two preceding deeds in defendants' chain of title, i.e., parallel with the south boundary of Government Lot 2. This line was in turn staked out on the ground with surveyors stakes, some of which still remained as late as 1960. It is further undisputed that between 1941 and 1945 defendants bulldozed and cleared the underbrush from their property between the existing homesite (the location of which is not disputed) and the beach, including upwards of 150 feet of area in the northwest corner of their property, up to their survey line. During the course of this bulldozing and clearing, it is likewise evident that, with plaintiff's timely knowledge, defendants removed approximately 150 feet of the most discernible portion of the old fence that had theretofore run easterly from the beach. Thereafter, defendants maintained the cleared area and regularly mowed the grass growing thereon up to their survey line and annually utilized the northwestern corner of the property for winter storage of their swimming float. And, it is unquestioned that the area lying to the east of defendants' homesite and through which the remnants of the old fence run is, with the exception of the pathway between the parties' properties, covered with heavy brush and timber and has been, on both sides of the fence, allowed to so remain over the years.

Likewise, the evidence indicates without cavil that no one has in any fashion or for any purpose endeavored to preserve, repair, or maintain any portion of the old fence, with the result that as of the time of this action only a few fence posts and strands of wire in varying postures and stages of decay remained. Furthermore, it is clear from the evidence that plaintiff was not only timely aware of the fact that defendants had removed the fence in the vicinity of the beach, but also was aware of the fact that defendants were since such removal utilizing and occupying as a recreational and beach area that portion of the property lying immediately to the north of the eliminated fence line.

■ Under these circumstances, we are satisfied that defendants "unfurled the flag" of hostile ownership when they destroyed the fence and cleared the land to their survey line in the recreational or yard area, and have since, within the contemplation of the law of adverse possession, occupied the disputed wedge for more than the statutory period (10 years under RCW 4.16.020) actually and uninterruptedly, openly and notoriously, hostilely and exclusively, and under a claim of right made in good faith. *Bowden-Gazzam Co. v. Hogan,* 22 Wn.2d 27, 154 P.2d 285 (1944); *Taylor v. Talmadge,* 45 Wn.2d 144, 273 P.2d 506 (1954); *Booten v. Peterson,* 47 Wn.2d 565, 288 P.2d 1084 (1955).

■ At the outset, it is essential to bear in mind that what constitutes possession or occupancy of property for purposes of adverse possession necessarily depends to a great extent upon the nature, character, and locality of the property involved and the uses to which it is ordinarily adapted or applied. In this vein, we have accepted the view that the necessary occupancy and use of the property involved need only be of the character that a true owner would assert in view of its nature and location. *Skoog v. Seymour,* 29 Wn.2d 355, 187 P.2d 304; *Bowden-Gazzam Co. v. Hogan, supra.*

In the instant case, we are concerned with a narrow, elongated wedge of property lying between two parcels of

land which, over the years, have been primarily devoted to rural water-front homesites and beach recreational areas with their more landward portions being allowed to remain in their original or unimproved state. Furthermore, it was never the conception of either of the parties that the boundary line between their respective parcels followed anything but a straight course. Under these circumstances, we are convinced that defendants' actions, in destroying a significant portion of the fence at the widest and seaward portion of the disputed wedge of property and in thereafter maintaining the residential and beach area to a clear and discernible line at odds with a boundary line which would otherwise be defined by any extension of the destroyed fence or its remnants, amounted to an occupancy of the entire disputed wedge lying north of the old fence line. Certainly, such actions met the requirements of the law regarding occupancy and use of rural, semicleared water-front property, and were sufficient to place plaintiff, as a rural landowner of ordinary prudence, upon notice and inquiry that defendants from the outset did not recognize or accept the old fence line as the boundary between their properties, and were asserting ownership to that property lying south and east of a boundary line in extension of the line defined by their survey stakes and the cleared area. In this respect defendants' use of the remaining property in the disputed wedge involved was consistent with the nature, location, and customary usage of like property in the general area. *Cf. Booten v. Peterson, supra.*

■ Plaintiff contends, and the trial court found, that the parties utilized the beach area which defendants had cleared in common with one another and with others in the neighborhood, thus negating the adversity or hostility of defendants' occupancy. Substantial evidence, however, does not sustain such a position. On the contrary, the evidence reveals that the children of the parties, as well as those of other neighbors, played about and over the various neighborhood beach areas with no more than the usual parental approval and restraint, and that the parties themselves oc-

casionally, socially, and casually visited back and forth, and sometimes assisted one another in the performance of various work projects, *e.g.*, beaching the swimming raft for winter storage. Such conduct, under the circumstances, denotes neighborliness and friendship. It does not amount to a subordination of defendants' adverse claim to the disputed wedge, for, as we have often observed, hostility under the law of adverse possession does not connote animosity. *El Cerrito, Inc. v. Ryndak*, 60 Wn.2d 847, 376 P.2d 528 (1962); *Fisher v. Hagstrom*, 35 Wn.2d 632, 214 P.2d 654 (1950). The evidence clearly establishes that at all times defendants intended to and did openly and notoriously act upon and claim title up to the line of their 1941 survey.

▪ Plaintiff also contends and the trial court likewise found that defendants' adverse possession and occupancy was interrupted by virtue of the fact that during a period of time between 1941 and commencement of the lawsuit defendants' premises were occupied by tenants. Again, the evidence does not sustain such a determination. On the one hand, the evidence does not reveal any occupancy of the cleared area or of the disputed wedge by plaintiff during the period of tenancy, and, on the other hand, defendants' evidence reveals that they or their children visited the premises off and on during the tenancy period and found conditions unchanged. Under these circumstances, the mere fact that tenants occupied the premises at times during the course of the 10-year period of limitations does not negate defendants' possession. *O'Brien v. Schultz*, 45 Wn.2d 769, 278 P.2d 322 (1954); *Foote v. Kearney*, 157 Wash. 681, 290 Pac. 226 (1930).

▪ Plaintiff further argues that defendants' actions did not establish or reveal a clear and definitive line, nor otherwise indicate a claim to any property east of the cleared area. Again, the nature and use of the properties involved, and the fact that any boundary line between them necessarily followed a straight course negates plaintiff's argument. A survey stake stood at the northwesterly corner of defendants' cleared area and the common easterly corner

820

was ascertainable. The line established by defendants' cleared area was obvious upon the ground, as well as any reasonable projection thereof, and patently at variance with the old fence line. Prudent observation or inquiry by plaintiff during the span of years involved would have revealed the extent of defendants' claimed ownership. Under these circumstances, defendants were not required to fence, clear, or blaze a trail along the path of their survey line in order to establish their claim to the uncleared portion of the disputed wedge. The extent of their claim was as open and notorious as the character of the land and its use required and permitted.

The judgment is reversed and the cause is remanded for entry of judgment quieting title to the disputed wedge of property in the defendants.

FINLEY, C. J., HUNTER, J., and DENNEY, J. Pro Tem., concur.

October 24, 1967. Petition for rehearing denied.

*Reported in 430 P.2d 965.